RECEIVED
SDNY PRO SE OFFICE

2020 AUG 20   AM 9: 52

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WILLIAM JAMES COKE SR.,

---

-against-

NEW YORK STATE DEPARTMENT OF CORRECTIONS:
CHIEF MEDICAL OFFICER: CARL J. KOENINGSMANN,
MEDICAL DIRECTOR:BENTIVEGNA, ROBERT., MEDICAL
DIRECTOR: FREDRICK BERNSTEIN, PRIMARY CARE
PROVIDER: YELENA KORBKOVA, MEDICAL SECRETARY:
RN. CHRISTINE RAFFAELE, MEDICAL DIRECTOR:
DEBRA GEER, GRIEVANCE PROGRAM AND DIRECTOR:
SHELLY MALLOZZI ADDITIONAL DEFENDANTS:
DEPUTY COMMISSIONER OF PROGRAMS: JEFF MCKOY,
GRIEVANCE PROGRAM SUPERVISOR: Q. QUICK, AND
PRIMARY CARE PROVIDER: FREDRICK PARKER.
MEDICAL DIRECTOR: RIZA FERDOUS.

7:19-CV-10038(PMH)

REAMENDED COMPLAIT
JURY TRIAL REQUESTED

## 1) LEGAL BASIS FOR CLAIM:

Presented are  infractions and deprevations resulting in the

aggrevation of inflicted injuries and when brining the matter to the

attention of the herein defendants in the form of a grievances, no

relief was granted. 1) At three prisons no prison doctor(s) wants to

examine, address or accomodate, nor provide treatment for plaintiff's

Vertebral and Swollowing problems. 2) Vertebral problems, due to

inadequate medical care have resulted in the loss of aquired skills.

3) Retraining to compensate for the loss is prohibitted based solely

on plaintiff's conviction, and 4) Grievance program and process has

contributed to default.

Plaintiff seeks relief: An Order from the Court Demanding defendants

to treat plaintiff's vertebral and swollowing problems and provide

accomodation, and these injuries placed back into plaintiff's medical

file. THAT plaintiff be allowed to enroll and complete the Master's

Program and THAT plaintiff be awarded with compensatory and punitive

damages for malicious intent.

## II) PLAINTIFF  INFORMATION:

William James Coke sr., 02B1082 ( **NO OTHER NAMES USED**)
Sing Sing Correctional Facility
354 Hunter Street, Ossining, New york 10562

## III) PRISONER STATUS:

Convicted and Sentenced prisoner.

## IV) DEFENDANT INFORMATION:

1) CHIEF MEDICAL OFFICER AND DEPUTY COMMISSIONER:
Carl J. Koeningsmann
The Harriman State Campus, 1220 Washington Avenue
Albany, New York 12226 Albany County.

2) GRIEVANCE PROGRAM DIRECTOR:
Shelly Mallozzi
The Harriman State Campus, 1220 Washington Avenue
Albany, New York 12226 Albany County.

3) DEPUTY COMMISSIONER: PROGRAM SUPERVISOR:
Jeff McKoy
The Harriman State Campus, 1220 Washington Avenue
Albany, New York 12226 Albany County ( **Service Requested**).

4) MEDICAL DIRECTOR:
Robert Bentivegno
Green Haven Correctional Facility, 594 Rt. 216
Stormville, New York 12582-0010 Dutchess County.

5) MEDICAL DIRECTOR:
Fredrick Bernstein
Green Haven Correctional Facility, 594 Rt. 216
Stormville, New York 12582-0010 Dutchess County.

6) Primary Care Provider:
Yelena Korbkova
Green Haven Correctional Facility, 594 Rt. 216
Stormville, New York 12582-0010 Dutchess County.

7) MEDICAL SECRETARY:
RN Christine Raffaele(Retired)
Counsel's Office, NYS DOCCS, 1220 Washington Avenue Bldg. #2
Albany, New York 12226x 12226 Albany County.

8) MEDICAL DIRECTOR:
Debra Geer
Auburn Correctional Facility, 135 State Street
Auburn, New York 13024-9000 Cayuga County.

9) GRIEVANCE PROGRAM SUPERVISOR:
Q. Quick
Sing Sing Correctional Facility, 354 Hunter Street
Ossining, New York 10562 Westchester County.( **Service Requested**).

2

10) PRIMARY CARE PROVIDER:
Fredrick Parker
Sing Sing Correctional Facility, 354 Hunter Street,
Ossining, New York 10562 Westchester County ( **Court's Descretion for Service And consideration for plaintiff's safety**).

11) MEDICAL DIRECTOR:
Riza Ferdous
Sing Sing Correctional Facility, 354 Hunter Street,
Ossing, New York 10562 Westchester County.( **Service of Injunction Order Requested**).

V) DATES AND PLACES OF OCCURRANCES:

| Green Haven C. F. | Auburn C.F. | Sing Sing C.F. |
|---|---|---|
| 11/30/15-8/25/17 | 8/25/17-5/28/19 | 5/30/19-**Present** |

## STATEMENT OF FACTS:

9) Defendants at Green Haven conspired to inflict unconst. injury resulting in harm and current degeneration of plaintiff's health and after getting these results, they destroyed such evidence and allowed plaintiff to be transferred without them.

10) As a defense defendants belie on the claim that exams were treatments, but the destruction of such created repeticious exams at two other prisons and the degeneration due to no treatment from any prison created a loss of skills, no accomodation for swollowing problems and an over-all refusal to treat and accomodate.

## II) ADDITIONAL FACTS: FAILED ATTEMPTS OF SEEKING RELIEF & REMEDY:

11) History of grievance complaints filed at Green Haven was made in 2013 when plaintiff was first introduced to Lisinopril, leading up to the 2014 reintroduction, and on 9/14/14. The allergic reaction caused many injuries unknown to plaintiff, which defendants to this day continue to keep from him, by use of conspired cover-ups.

12) Prison conditions got so bad for plaintiff that he could not bear the suffering in pain, harrassment from inmates and Staff as well as indifference of defendant Korbkova, he requested a transfer and was

3

sent to Auburn C.F. without any evidence of these injuries.

13) Upon arrival at Auburn and until depature, 5 grievances were made 3 were of critical importance and placed everyone on notice. And again exactly nothing was done to address these complaints and plain- tiff was transferred.

14) At Sing Sing, plaintiff had to wait 3 weeks before he got to meet his Primary Care Provider, who had no problem with Block showers or travel passes. But after Dep. Henton got in his ear...The policy change was now to deliberately deny accomodation and a grievance complaint was made.

15) The 3 week wait was in violation to the 1 week Medical Protocol required to see patients when they first arrive at the prison, letters complaining this doctor's aggressive disposition, fickelness and out- right denials of accomodation makes plaintiff knows that he does not have plaintiff's best interest as a doctor in mind and 9 times out of 10, he will do more damage than good.

16) Medical Director on the other-hand(Ferdous) does have plaintiff's best interest in mind and has involved Herself in the fact-finding of plaintiff's medical issues but Covid-19 has closed all out-side Jail trips to hospitals.

17) Before Dr. Ferdous got involved, plaintiff filed a grievance about the disparity of treatment excercised by Dr. Parker and the Medical Director defended it and the appeal to the Superintendant was not forwarded pursuant to grievance policy and proceedure and the State's exhaustion requirements.

4

### III) <u>REMEDY & RELIEF DENIED BY ASSERTIONS:</u>

18) At Green Haven CORC gave up many unrealistic assertions as to why both remedy and relief should not be granted inspite of the medical facts before them or at their access, and since these prison doctors were already doing nothing for plaintiff, this allowed them to do more of it.

19) The average 18-24 Month wait at Auburn, violated the prison policy and proceedure, State Law and Federal mandates, statutes and Const. and even when it was made known in the grievance investigation, the fact of acknowledgment and prior knowledge were denied and plaintiff's medical needs continued to go unattended to.

20) Sing Sing's policy and procure of it's grievance program falls out-side of the bounds of granting relief and getting it pass the Supervisor is an unauthorized obsticle because She don't care about grivant's 1st Amendment rights.

### <u>CAUSE OF ACTION:</u>

<u>Count:1</u>

### <u>FIRST AMENDMENT VIOLATION: RETALIATION:</u>

21) Inspite of any of the legal shrouds surrounding Dr. Bernstein, he in the interest of Justice, is not precluded from testimony, investigation or any other device of law in this matter and since it all began with him, facts show that he's not only the source but he's also "the cause", and this history goes back to 2005.

22) On or around 3/5/05 plaintiff arrived at Green Haven and was held there by Medical-holds every since the day he transferred. This policy was abused so bad that it interferred with plaintiff's direct appeal due to the suspecte diagnosis of T.B.

23) Medical doctors knew of plaintiff's coughing condition at Midstate and Five Points, and was never segreated and allowed to work in a number of Mess-halls in which they cleared him for.

24) When plaintiff's direct appeal was finalized, he was given permission to enter his Pro-se motion, which he had prepared, but the prison's medical interest took priority where plaintiff's lungs were scraped with saline solution, called it T.B. and resulted in a 16-20wk. isolation under keep-lock proceedures.

25) The keep-lock prevented plaintiff from presenting the documents he prepared, many extensions explaining the circumstances were given and like the Police interogation plaintiff lost heart and presented jibberish, and signed it.

26) This was but another act of interferrence, tests back then confounded the doctors and they could'nt explain the Negative T.B. results and why the extensive stay. Records continue to show that test results remain negative, which makes the diagnosis deliberately false because plaintiff never had T.B. back then and to this day he does'nt have it.

27) No, he could'nt stop there. It's more than likly that if a transfer would have been granted, the "Anaphylatic shock/allergic reaction of 8/14/14, would have never taken place. But it did and the medical-hold x̶a̶x̶x̶t̶h̶x̶i̶x̶t̶x̶x̶d̶x̶d̶x̶p̶x̶x̶ served it's purpose.

6

## 1.) ENGAGED IN PROTECTED RIGHT:

28) From 8/14/14 to present day, prison doctors let plaintiff roam around from Max. to Max in his condition. The pain got so bad with chest pains, combined with the memories of that night in the ambulance created a need to get relief. While the Primary Care Provider told lies and hid the truth.

29) As Medical Director Dr. Bernstein refused to respond, as plaintiff began to collect his medical records but had no ideal of what was taking place. See, Ex.1 (3pgs.) The Hospital called the diagnosis as "Angio-edema Secondary to Angio-tensin-Converting enzyme inhibitor Reaction with Severe Tounge swelling". At the Prison the Male Nurse called it "Anaphylactic shock" and these records indicate resulting complications not known to this day by plaintiff.

30) A complaint was made to Superintendant Lee and the Deputy of Security made Dr. Bernstein respond, where the two date remain confusing. He gave the diagnosis of   "Cervical and Lumbar radicular nerve root pain". As the Primary Care Provider continued to deny it and further his lies.

31) An undated letter was directed to Dr. Bernstein and he gave it to the unqualified "Ms.P." to respond to. This was the first act of seperating the nexus. See, Ex. 1-1 *  (2 pgs.).

32) On 11/24/14 plaintiff had an MRI and morphine was prescribed the small relief it gave was appreciated until it was discontinued. See, Ex. 1-1-1 (3pgs.)

---

* In an earlier Valitin issue of Ms. P, She suddenly could'nt be identified even though She worked under Dr. Bernstien's supervision. Judge Karas allowed the response and dismissed the defendant.

33) Plaintiff reached out to the Legal Aid Society and the Intern addressed the issues with Dr. Bernstien, who responded that "Myelomalacia is not the source of pain". Contrary to the Surgeon's detailed diagnosis using the MRI. And to this day Surgeon P. Charles Garell examines plainitiff and can bear witness.

34) The aggrevation of pain, the suffering of doing nothing and the useless grievance program were of no help so plaintiff on 5/12/15 filed an Art.78 in Dutchess Co. Sup.Ct. seeking an injunction against Commissioner Annucci, Superintendant T. Griffin, Dr. Bernstein and Clark.

37) On 5/27/15 Hon. J.D. Pagones responded; Index# 1904/2015 "exempt from Court fees". Months later the complaint was dismissed and while trying to appeal, the MRI on 9/3/15 took place. Followed by a Meeting with the Pain Managment Clinic and the harm done was irrepairable.

38) A second meeting took place with Dr. Garell and On 11/25/15 the Cervical disk-fusion took place removing two herniated disks, Trouble-some since 2009, noted in MRI not disclosed See Ex. 2 (3 pgs).
39) Unfortunately, plaintiff had to return due to swollowing issues and infection on 11/30/15 resulting in a peg-tube placement for nutrition.

40) While the Art. 78 was pending plaintiff established contact with the U.S. Attorney's office and filed the forms sent to him
to make a formal complaint*.

---

* Issues around the complaint and it's resolvement remain undisclosed to
  plaintiff and there have been no responses XXX of the FOIA requests.

8

## a) SUBJECTED TO ADVERSE ACTION:

### GREEN HAVEN C. F.

$1) Before plaintiff was transferred on 8/25/17. A plethora of Medical evidence of injury was established in his medical records, See, Ex. 2-1(5 pgs.). On 1/25/16, swollowing exams were moved away from R̶H̶X̶H̶X̶X̶ H̶m̶x̶p̶.Westchester Med. Ctr. to Putnam Hosp. with recommendations.

42) On 2/19/16 R. Meuller Radiologist examined and evaluated "Anterior Surgical Spine Fusion C4-C5" and on1/9/17 the saw plaintiff and examined L5-S1.

43) On 2/10/17, the Otolarnynology examined C4-C5 and determined that the "fusion" was the source of pain and because it was fused, there was nothing he could do to remedy the problem.

44) And on 5/5/17 plaintiff was returned to Putnam Hosp. for possible treatment plaaning and thereafter the medical doctors cancelled all future vertebral and swollowing exams 3 Months before he transferred absent of these and historycal medical evidence.

### AUBURN C.F.

45) Upon arrival at Auburn plaintiff was placed on the 4th floor, by the 3rd meeting with Dr. Geer plaintiff complained of being on the 4th floor and all of the pain he experiences going up the stairs and presented Her with Medical exhibits used in his law-suit and requested that She make copies and verify it and asked for a flats pass and a feed-up a second time and she denied it a second time.

46) On our 1st meeting, when plaintiff made the request for such, her response was that " there's no indication of any vertebral or swollwing problems and without such I will not grant your request".

9

47) After hearing 2 flat-out No's plaintiff took matters into his own hands and did what he did at Green Haven and began to steal his food out of the mess-hall using a plastic bag. Signed up for Priviledged Housing and buy his own food because of the flat-out denials of Dr. Y. Korbkova and now Dr. Geer.

48) On 12/18/17 a grievance complaint was lodged "ADA Difficulty Swollowing need more time to eat". See Ex. 3 ( 5 pgs.). Exhaused 4/24/19, appealed from Superintendant 1/16/18. Please read his resp ponse. Which agrees with I.G.R.C., yet blames plaintiff for not doing something he already tried doing twice.

49) Plaintiff began to challenge Dr. Geer's assertion about the missing medical indication because of the increasing pain in his neck back and legs and got help fromPeople around him that could help See, Ex. 4 (10 pgs.).

50) Because of the content...In short, a F.O.I.L. request was made for X-rays taken at Vasser Brothers Med. Ctr. on 8/14/14. Medical records at Auburn responded "no x-ray reports are available". Plaintiff reached out to Dr. Geer, Mrs. Porter his Psych. Therapist and the Program Committee, which also included Jeff McKoy where a response came from Mrs. McGrath.

51) All of the herein lead up to a Consult with a Telemed conforance, MRI and Consult with Othropedics, who recommended Pain Mgt.Whose recommendation was for a Epidermal steroid shot for L5-S1. The transfer was approved to Sing Sing all based on the herein because of the long-term pain, wear and tear and not properly being informed or protected.

52) In between these dates on 3/13/18 the 3rd grievance was filed. See Ex. 5 (10 pgs.) All based upon complaints made in Ex.4, declining health due to spinal degeration void of treatment. And plaintiff still had no clue of what has taken place causing him to advocate even more to protect his most prized possession.

53) And because of the extensive delay, the 4th grievance was filed on 11/10/18, stamped  12/5/18'Untimely CORC Decisions'. The matter was investigated as 14 Months over-due, as of 12/5/18.See, Ex.6 (5 pgs.) The last page details an over-all summary and in all of this, everybody but medical tried to assist plaintiff, when the shot was recommended Dr. Geer vanished, vacation, hiding who knows? But facts snow that no orders of Her authorizing any treatment of the shot are void of instructions.

## SING SING C.F.

54) After a brief lay-over at another prison, plaintiff arrived here on 5/31/19 and was enlightened to the subtle aggressive hint that he is not welcomed here. Throwing his bucket, lamp and other things in the garbage, nothing was said, plaintiff filed a claim.

55) It was time to see and meet the Primary Care Provider, all the+ came with plaintiff met with theirs. Plaintiff had to wait 3 Weeks contrary to medical protocol, which requires that doctors meet with their patients within the week they arrive. Besides, plaintiff could have had T.B..

56) But after going to Orientation, coming up those many stairs and the pain resulted in 3 sick-call visits and plaintiff finally met

11

with Dr. Fredrick Parker. During these conflicting periods Dep.
Henton had no problem with violating the "Reasonable Accomodation"
Clause and after the first ⸺ medical pass, which gave him time
to reseach plaintiff's medical history would have justified keeping
the showers in place.

57) He looked at plaintiff like he had two-heads when he learned that
he was here for the college program and responded "why would you come
here for that". And efery since the mind-set and behavior shows that
there's a tendency to follow the lead of others, rather than stick
to the medical facts. See, Ex. 7( 9 of 10 pgs).

58) This first grievance was ignored, but the second made it and he
was shrouded in protection, despite the fact that the Pass was 23
days late. But what's so inept about the skills for matters like this
No-one has the *Common Sense* to resolve matters of such a simple
nature, why would anyone send a medical issue to a Dep of Programs?
When it's plainly a Medical issue of fact?

59) Later, plaintiff wrote two letters to Medical Director asking
for assistance and since, She taken an active role in trying to get
to the medical facts. In the second letter to both Parker and Her,
it was requested that the 2nd Epidermal streoid be issued and the
plaintiff be given a Barium swollow study to evaluate his swollowing.

60) Since Dep. Henton is no longer here the atmosphere is doable,
just don't ask for showers or feed-ins, as of 7/15/20 the Medical
Pass was renewed, Dr. Parker also acknowledged the Barium Swollow
request and is willing to get the study but the jail is not making
outside trips.

61) Plaintiff feels that by making these two doctors defendants rather than allies to got him the needed madical and treatment, and accomodation as well as the restoration placed back into his medical records would be counter-productive as facts prove that the tiny bit thus-far is more than that, that was done by defendants at Green Haven and Auburn put together.

62) And for these reasons, an Injunction Order should be issued that Chief Medical Officer help and empower Medical Director and Primary Care Provider at Sing Sing to give/issue adequate and prompt care to plaintiff's medical needs and accomodation. The 10th piece of the enclosed shows that plaintiff will be processed for enrollment for the 2020-2021 Academic year into the long awaited Master's program.

63) The search for the statement made by Dr. Koeningsmann is still soughted eventhoug it's in Ex. 8-2, filed under 17-cv-0086(ER), but the F.O.I.L. was requested a 2nd time. But the 1st one was a kick in the mouth. See Ex. 8 (6 pgs.). The request is plain and simple under the advise of the ORC. Made on 11/1/19.

64) On 11/18/19 a grievance was filed, and Q. Quick responded with Department of Counsel's address and on XXXXXX 12/16/19 yes Mr. McKoy responded about some letter and used the same response made on 1/23/15. The only letter written was an inquiry about the letter written to Mrs. Mc Grath that enclosed the statement made by Dr. Koeningsmann.

65) On 2/5/20, Q. Quick responded on the behalf of Superintendant informing that the appeal made to him, was never recieved. Then She made reference to a claim, but in reality the claims office

took two different claims and gave them the same number and never returned proof of ownership.

66) Lastly, See, Ex. 9 (5 pgs.), that repeats everything that was done at the two other prisons, there's more, but for the sake of fact that expose conspired cover-up designed to interfer with adequate care and exclusion.

### c) CASUAL CONNECTION BETWEEN ADVERSE ACTION AND PROTECTED ACTIVITY:

67) The Art. 78 forced Dr. Bernstien to provide care and treatment to plaintiff and if it was never filed, the operation would have never taken place. But the complaint made to Attorney XXXXXX resulted in Dr. Clark's retirement and Dr. Bernstein's eventual transfer resulted followed by the law suit. Was within plaintiff's rights.

68) Defendants Bentivegna, Korbkova and Raffaele conspired to remove or destroy medical evidence of injury to inflict further injury to plaintiff's unresolved serious medical needs and allowed him to transfer abesent of medical injuries inflicted by Clark and Bernstein.

69) Had this medical evidence been in place inside plaintiff's medical records he would have not been placed on the 4th floor and would have been accomodated. But instead, of providing care by verifying the evidence given to Her, she chose to join in with defendants at Green Haven and created an extensive delay and when the facts revealed the need for the shot, she denied such by disappearing (Dr. Gear).

70) And now the doctors here at Sing Sing, during a Covid-19 epidemic carry their burden and by right these doctors should get half of their pay. Inspite of the back-and-forth becrering, these doctors can

provide adequate care and accomodation if the Albany Office stop it's interferring. Dr. Koeningsmann could have done something about it a long time ago, but he had to get involved in Dr. Bernstein's "note" of conspiracy.

### d) OTHER CONNECTIONS:

71) Some may say this new revelation of retaliation is coincidental, However, on 7/10/20 plaintiff moved from P-75 to P-56. The move and setteling in the new cell took all day and the pain was great. So plaintiff took his mobic and tegritol combination of nerve pain meds and slept like a rock.

72) C.O. Thomas did a go-round wake-up @ 6AM, this is a sitting or standing wake-up and plaintiff sat-up and layed back down, but She wanted plaintiff to stand up, but plaintiff turned himself to the wall until she left and as he tuned back away from the wall two White shirts went by.

73) On 7/15/20 plaintiff was served with a ticket, a tier II for 106.10 Direct Order; 107.10 Interference; 112.21 Count Procedure Violation and 112.22 Visibility Obstruction, the ticket has plaintiff's name on it but it also had a discription of what inmate Woods was doing. But she said that I was laying down...

74) On 7/17/20 A correct ticket was served with the same charges. On 7/17/20 a Hearing was conducted and it was pointed out that plaintiff filed a grievance on 4/8/19 at Auburn due to his medical needs being not met, the tregritol and mobic which now challenges Security protocol and Count procedures, as a result the charges were dismissed.

75) The rationale from evidence of not having a ticket for close to 2 Decades and the medication issue. These are teir 2 violations that reach beyond a 30 day keep-lock, which automatically makes a prisoner lose his Program and for plaintiff, his enrollment (see Ex. 10)

76) But the most sickest and lowest of lows is that all was fine until plaintiff made a request that the Court issue Orders of Service to Jeff McKoy and Q. Quick, which only two Offices knew of this. The Court and Counsel for defendants. This was a deliberate act to obstruct participation and interfer with enrollment and to cause plaintiff's prison status to rise back up to MAXIM Maximum status, based on these facts alone relief should be granted and opposition silenced.

COUNT 2:

## EIGHT AMENDMENT VIOLATION;

77) Chief Medical Officer knew of plaintiff's condition when he made the complaint to the Governor about complaints of pain and suffering, that nothing was being done and the Chief responded with a letter labeling all of the exams lined up and escaped liability with a "note".

78) Defendant Mallozzi, acted indifferntly to a serious medical impairment she had notice of and the extensive delay furnished no relief or accomodation or caused an exam. It turned out to be a waste of time.

79) Defendant McKoy had notice of plaintiff's impairments and acted with a culpable state of mind when he contraily had plaintiff moved to Sing Sing for the Master's Program for which he is enrolled and class begin in Sept. and some C.O. targets plaintiff with lies, to prevent enrollment, which defendant asserted many times solely on a conviction.

80) Dr. Bernstien created a policy of action to target plaintiff

16

for injury if not death and after plaintiff got him and his cohort, Dr. Clark in trouble. He recruited Dr. Korbkova, Bentivegna and Raffaele and conspired to inflict further injury for the purposes of retalia-tion, where these new defendants destroyed all medical evidence of injury and allowed plaintiff to be transferred without them.

81) Dr. Geer asserted that "there's no indication of any vertebral or swollowing problems in your records and without it I will not issue you a flats pass or feed-in. Even after the grievance nothing was done and 19 Months later when the Epidemal steroid shot was recommended she joined the side of defendants of Green Haven and provided no treatment for a known medical need.

82) Defendant Q. Quick show and proves that she has no interest in the rights of this prisoner's medical needs or retraining or none of the relief he seeks. Instead of doing her job, she goes out of her way to make relief more difficult for this plaintiff, which includes violating his First Amendment right to address the Court with his grievance that she circumvented.

COUNT 3:

### FOURTEENTH AMENDMENT VIOLATION:

83) All the defendants herein (9), have violated plaintiff's Equal Protection Rights Of the Law when they allowed their descretion to influence their action/inaction, attitudes and behaviors to violate plaintiff's Due process Rights which also helped inflict further injury(s) resulting in granting no relief or remedy.

84) Their abuse of descretion also singled plaintiff out placing him in a class of one, showing a disparity of discriminating treatment

17

and exclusion of inmates  similarly situated and now a Court of Law has
to remind them why they are employed.

COUNT 4:

### ADA & REHAB ACT VIOLATION(S):

85) By providing plaintiff with simplist of accomodations for his verte-
bral and swollowing problems would not have compromised any Security
issues or matters, they just abused their descretion and decided on
the contrary.

86) This liable decision forced plaintiff to further place injury of
wear and tare working Industry so that he could buy his own food
because of the needed time to chew and swollow. Plaintiff can swollow,
he's just unlike others that wolf their food down, plaintiff has to
swollow in small portions.

87) The inflicted injury caused by prison doctors and other doctors
inteffence furthering such has now resulted in degeneration, which
also compromises plaintiff's independence in prison and outside such.
And retraining is but a small portion irregaurdless of plaintiff's
age. Plaintiff's work history started when he was 12 years of age.

88) This deliberate exclusion denied plaintiff the opportinty to
partake in the prison's program, services and activities as well as
the mdeical's program of protection, where Points 71-76 gives  Security
notice of plaintiff's medical status.

### SUMMARY:

Nothing, contained in this complaint shows any behaviors made by
plaintiff to warrent these vicious attacks on his person, health and

18

rights, when defendants decided to abuse their descretionary powers
to make individualized contributions to further plaintiff's injury(s)
when they agreed to cause harm(if not death), deny any type of relief
or make relief available, and please let's not forget the complaints
made in this Court since the prosecution of the herein. located in
this Court's records, events of this present day.

When examining the behaviors enacted, defendants stand naked as sin
and this action priveds many areas of relief, both Civil and Criminal
which starts with an investigation outside the Attorney General's
authority of assistance, because they will not prosecute themselves.
Defendant Bernstein, spearheaded the entire matter. First with the
extensive medical-holds, leading up to the injury and then doing
nothing about it while knowing, lead to an Art.78, where a Court of
Law made him, and after getting him and Dr. Clark in trouble with the
U.S Attorney's office and filing a lawsuit, defendant Bernstein further
took the law into his own hands. He'd earlier, used Ms.P to seperate
the nature of injury and later got the assistance of defendant Koenings-
mann and while he was waiting for his transfer to Fishkill C.F. he
recruited defendant Korbkova, and Raffaele and later Acting Med. Di-
rector Bentivegna to finish. These defendants collected and stock-piled
a plethora of exams and Barium swollow studies, and XXX witheld all
of the results, refused to disclose to plaintiff what was going on
or make the pain bearable with effective medication. In short, nothing
was done for plaintiff after the operation or when the peg-tube was
removed and they destroyed all of this medical evidence upon transfer.

Upon arriving at Auburn, defendant Geer took 19 Months to regener rate these records, which only the issue of L5-S1 was in need of immediate care and when this need was verified by a Specialist, she went and hid herself until plaintiff transferred. It was already established that She refused to give plaintiff a flats pass or a feedin because she claimed that there was no indication of such a need and had no problem with plaintiff complaints of back-aces, lied on the grievance and plaintiff could no longer work prison industry(2005-2019). Defendant McKoy continues to try to protect defendant Koeningsmann, while using unlawful discriminary acts to deny retraining inspite of the current enrollment into the 2020-2021 Fall Semester, based solely on a conviction that defendant Bernstein assisted with securring with the pretensious diagnosis of T.B. check the medical records, plaintiff did'nt have it, don't have it and never had it! And this is what they claim immunity for, this is what all the shysterness is all about, and let's not leave out defendants Malloxxi and Quick, they hinder plaintiff's first Amendment right and his access to the Courts to redress grievances, a means in which to supress and support these unlawful actions defendants used on plaintiff for no warrented reason.

## CONCLUSION:

The remedies of these unlawful attacks, conspiracies and cover-ups warrents many kinds of relief, since defendants took the law into their own hands and punished plaintiff, and plaintiff was already punished in a Court of Law and these unauthorized attacks warrents immediate removal. If plaintiff had done any of the herein to one

20

of them like stomp defendant Bernstein, Clark or Korbkova as retali-
ation for these injuries, it would have to be proven that no injuries
existed, but the dam truth and proof from three different prisons s
sit in plain sight, so where did it come from? plaintiff is not that
bold, smart or willing to make fraudulent claims because they are real,
pre-esixstant long before prison and these defendants need to be
made an example of, how long will this Court put up with these biggotted
abuses, knowing that these prison doctors and agents ineptitude is
so displaced that they could'nt function productivily if the public
eye was on them, they need to be in places like prisons to do unneeded
harm and they need to be weeded out along with those that support
them before something really, really, really bad happens to some un-
sepecting person.

   WHEREFORE, plaintiff prays that this Court will restore this New York
born, disable Veteran's(plaintiff) rights by issuing a Court Order
to provide plaintiff the prompt, adequate medical care his is in need
of for his Vetebral and Swollowing problems. IT IS FURTHER REQUESTED
THAT: This Court Cause a Federal Investigation to commence before
Jury trial to ascertain the evidence of corruption of a criminal
nature. Whereby the option here is that defendant Koeningsmann can
stop all of the herein and future litigation, where plaintiff is
medically released to Parole Supervision and 3.5 Million dollars in
full satisfacton. Thereby, if defendants reject settelment, IT IS
REQUESTED THAT: Each defendant be held liable for their individual
participation(s) in the amount of 1.5 Millén dollars in compensatory

damages and liable for punitive damages in the amount of 10 Million dollars each for their vile and malicious participations. **IT IS LASTLY REQUESTED THAT:** Accomodation for these medical problems be granted and any compensation derived, be exempt from State collection unlike punitive. If this Court considers the current circumstances in terms of the Covid-19 Pandemic, which prevents outside medical trips by the jails imposed upon by the State, this has but become another hurdle to endure. What alternative remains? to deny this complaint will be a great injustice and empowerement to injustice but the obsticles to resolving college attendance, medical care and other needed treatments remain an obsticle, which leaves only one means of expedience to make this all go away, plaintiff wants for this nightmare to end and it's confident to think that defendants and what they stand to lose, probably want it too.

Plaintiff prays that defendants give these issues considerable thought to the damages they've created and inflicted upon this plaintiff and his need for medical care with release and enough compensation for his future medical needs of a Specialized nature, retraining and for the pain, suffering and mental torment forced upon him, exempt from any State collection; to be adjudicated by this Court.

Respectfully,

William J. Coke Pro Se
02B1082
Sing Sing Corr. Fac.
354 Hunter Street
Ossining, NY 10562

cc; Assistant Attorney General
J. Doran, NYS Attorney Gen. Ofc.
28 Liberty St., Ny, NY 10005

Health Quest    Vassar Brothers Medical Center    **MR#: 111015698**
45 Reade Place    Account # 5193388
Poughkeepsie, NY  12601-3947    COKE, WILLIAM  Male  58 years
DOB  06/13/1956  NURSING STATION SC6
ROOM: 663
ADMIT DATE 08/14/2014
DISCHARGE DATE  08/17/2014
Sangurima MD, Jessica E.

---

## Consultation Notes

**Document Name:**    Physician Consult  Auth (Verified)
**Performed By:**     Payman MD, Rami N.  08/14/2014 09:42:44 EDT
**Authenticated By:** Payman MD, Rami N.  08/14/2014 12:50:33 EDT

CONSTITUTIONAL: The patient is without fever, fatigue, or weight loss. SKIN:
There is no skin rash. HEENT: He denies any vision problems. He denies any
congestion in the ears. ENDOCRINE: He has no thyroid problems. CARDIOVASCULAR: He
denies chest pain. RESPIRATORY: He denies cough, but does complain of shortness
of breath. No wheezing. GASTROINTESTINAL: He denies abdominal pain, nausea,
vomiting or diarrhea. MUSCULOSKELETAL: He denies joint swelling. NEUROLOGIC: He
denies headache.

PHYSICAL EXAMINATION:
VITAL SIGNS: Temperature 97.4, heart rate 71, respiratory rate 13, blood pressure
155/92, oxygen saturation 100%, weight 98 kg.
GENERAL: This is a 58-year-old male in an ICU bed, sitting upright, in no acute
distress, but unable to speak clearly, with markedly garbled voice secondary to
severe tongue edema. There are no retractions noted.
HEAD: Atraumatic, normocephalic.
EYES: Sclerae are mildly injected. Pupils are equal. EOMs are intact bilaterally.
EARS: Auricles are of normal size and configuration. Meatus is without discharge
bilaterally.
ORAL CAVITY: The tongue has severe watery edema. There is edema of the floor of
mouth. The hard palate appears normal. The dentition is in poor condition. Soft
palate has some moderate edema. No masses, lesions or bleeding is noted. There
are moderate clear oral secretions.
NECK: There is no palpable adenopathy. There is no cervical tenderness. The
trachea is midline. No stridor is present. The thyroid is not enlarged.
CHEST: Symmetric with equal chest expansion. No wheezes are noted bilaterally.
HEART: Regular rate and rhythm.
ABDOMEN: Soft, without tenderness.
NEUROLOGIC: The patient is awake and oriented. Responds to commands. Speech is
abnormal secondary to swollen tongue, but the exam is nonfocal.
EXTREMITIES: Warm, without clubbing, cyanosis or edema.
PSYCHIATRIC: Mood is normal, with slight anxiety secondary to the tongue
swelling.

LABORATORY:
White count 10.1, hemoglobin 14.0, hematocrit 40, platelets 276.

IMPRESSION:
ANGIOEDEMA SECONDARY TO ANGIOTENSIN-CONVERTING ENZYME INHIBITOR REACTION WITH
SEVERE TONGUE SWELLING.

---

Chart Request ID: 7069180          Page 20 of 25          Printed Date/Time: 4/24/2015 13:09:42
Printed By: McDonald, Kayla
This document contains confidential patient Information which is protected under both Federal and State law.  If you are not the Intended
recipient, please contact the Health Information Management Department at (945) 437-3020.

FORM 3105A (7/11)          STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
**AMBULATORY HEALTH RECORD PROGRESS NOTE**

| Name | DIN | Date of Birth | Facility Name |
|---|---|---|---|
| COKE, WILLIAM | 02B1082 | 6/13/56 | 080 |

**Subjective:** "SWOLLEN TONGUE - STARTED AT
2 AM - GETTING BIGGER"
"HAVEN'T EATEN SINCE 10 P.M."
STATES HE IS COMPLIANT WITH HIS
**Objective:** MEDS (HAD AM PO MEDS POURED)
BROUGHT PROMPTLY TO CLINIC -
TONGUE CONTINUES TO SWELL BY THE MINUTE -
**Assessment:**
ANAPHYLACTIC TXT PROTOCOL INIATED
IV ACCESS: 20g (L) ATC   2:45A CHARTS NOTIFIED
**Plan:** BENEDRYL 50 mg IM 2:52 AM   AMBULANCE CALLED   2:48
EPINEPHRINE 0.5 ml 1:1000 IM 2:54 AM (HR 84)
LUNG SOUNDS: CTA BILATERALLY 2:56 AM

Last Name COKE
DIN 02B1082   Location C-2-14
Date 8/14/14   Time 2:30 AM
Provider Orders: ALLERGIC ACE INHIB.

2:40A 178/94, 83, 20
O2 SAT 99%

**Signature/Provider #** _____   **RN Transcribing Order/Provider #/Date/Time** _____

**Subjective:** IM TRANSFERRED BY MYSELF
AND SECURITY TO FRONT
LOBBY TO WAIT FOR AMB'S
**Objective:** 3:04 AM AT FRONT GATE
3:06 AM 0.5 ml 1:1000 EPINEPHRINE
ADM IM - O2 SAT 95%, PR: 92
**Assessment:** TONGUE NOW PROTUDING FROM MOUTH
3:05A LUNG SOUNDS: FAINT INSPIRATORY STRIDOR
NOTED WITH EACH INHALATION
**Plan:** IM ACKNOWLEDGES HE IS STILL BREATHING OK BY
NODDING TO MY QUESTION
3:12 AMBULANCE ON PROPERTY

Last Name 2:56 AM VITALS:
B/P: 184/90   PULSE 94
DIN
Date RESP 20   O2 SAT 96%
Time   TONGUE CONT. TO SWELL
Provider Orders:

3:07 V/S: PR 105, O2 SAT 95%

**Signature/Provider #** _____   **RN Transcribing Order/Provider #/Date/Time** _____

**Subjective:** 3:15 AM CARE TRANSFERRED
TO ACLS CARE
**Objective:** [signature] 0337

Last Name _____
DIN _____   Location _____
Date _____   Time _____
Provider Orders: _____

**Assessment:**

**Plan:**

**Signature/Provider #** _____   **RN Transcribing Order/Provider #/Date/Time** _____

Continue entry into next box if necessary.

FORM 3105A (7/11)      STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
**AMBULATORY HEALTH RECORD PROGRESS NOTE**

Name: *Coke*     DIN: B2B1082     Date of Birth: 6/13/56     Facility Name: OSO

---

**Subjective:** "I have CP. SOB and Back pain"

Last Name: *Coke*
DIN: 02B1082     Location: Clinic
Date: 8/27/14     Time: 1045

**Objective:** Back pain started yester-day. SOB + CP started in industry

**Assessment:** No CP. ∅ SOB ∅ Diaphoresis

Provider Orders: 97.9 HR 67 (R) 143/84
O2 Sat 99%   (L) 147/87

**Plan:** Resp reg + easy. pain c̄ movement and constant CP - midsternal.     #83

Signature/Provider # _____     RN Transcribing Order/Provider #/Date/Time    B Binder RN

---

**Subjective:** "I had to come back" _____ of some LBP, also c/o LBP pain - vital signs noted

Last Name: *Coke*
DIN: 02B1082     Location: _____
Date: 8.27.14     Time: _____

**Objective:** Tender LBP, Cond clr ___ tender

Provider Orders:

**Assessment:** ___ LBP ___ non cardiac CP / ___ ___

**Plan:** Non vital. Toradol 60mg ___ ___

Signature/Provider # _____     RN Transcribing Order/Provider #/Date/Time

---

**Subjective:** "Chest + head felt stuffed up" "not three times" "Would like sugar checked" "Loose cough"

Last Name: *Coke*
DIN: 02B1082     Location: C 2-14
Date: 9/2/14     Time: BSP - 9/88

**Objective:** SpO2 96% HR 69 98° 13 ∅ 8° chest congestion

Provider Orders: Skin dry Resp even + unlabored

**Assessment:**

**Plan:** - Appt for labs c̄ Dr Clark - to clinic provider -

Signature/Provider # _____     RN Transcribing Order/Provider #/Date/Time   9/2/14

Continue entry into next box if necessary.

NEW YORK STATE
DEPARTMENT OF CORRECTIONAL SERVICES
**GREEN HAVEN CORRECTIONAL FACILITY**

MEMORANDUM

TO:        William Coke, 02B1082, C-2-14

FROM:      Frederick Bernstein, MD, FHSD *FB*

DATE:      October 10, 2014   *10/31/14 FB*

SUBJECT:   Your letter to Supt. Lee dated 9/28/14

First Deputy Superintendent Lilley has requested that I respond to your letter to Superintendent Lee of 9/28/14.

I have reviewed your medical record. You are being treated for symptoms and x-ray findings consistent with cervical and lumbar radicular/nerve root pain. Gabapentin/Neurontin is appropriate medical treatment for that condition.

If you symptoms persist despite treatment, you are encouraged to address that concern with your primary care provider. You may request an appointment to see your primary care provider by attending routine block sick call.

cc. DS1 Lilley

Thyzes a dragnosis from
C14

William Cole
02B1082, CZ-14

Cervical and Lumbar radicular/nerve pain

This is a diagnosis from an allergic Lisinopril
reaction. What is it and length of time
for heal?
Thank you.

I can find no mention anywhere of

Cervical and lumbar radicular / nerve pain

being a symptom of an allergic reaction

to Lisinopril

MsP

```
   /15 10:49:43      NYS DEPARTMENT OF CORRECTIONAL SERVICES        PAGE   1
   ,81                      HEALTH SERVICES SYSTEM
                     REQUEST AND REPORT OF CONSULTATION
```

NAME: COKE, WILLIAM J                      DIN: 02B1082    DOB: 06/13/1956
                                           CURRENT FAC: GRN HAVN GEN
REFERRING FAC   : GRN HAVN GEN             REFERRAL NUMBER: 15371539.01M
REFERRAL DATE   : 09/03/15 10:48A  TELEMED: <N> REFERRAL TYPE  : INITIAL
TYPE OF SERVICE : NEURO SURGERY            REFERRAL STATUS: AWAITING CCP RV
URGENCY OF CARE : ASSIGNED                 INTERPRETER:

MEDICAL HOLD: NO     TYPE:   · REASON CODE:    EXP.DATE:
TRANSPORTATION : N   WHEELCHAIR  N   NURSE  N   AMBULANCE  N   LITTER  N   HCA
SENSORIAL IMPAIRMENT:
REFERRED BY: MORRIS CLARK, MD              REQUESTED BY: 10/04/15
REVIEWED BY: FREDERICK BERNSTEIN, MD


REASON FOR CONSULTATION:                   USER: 09/03/15 10:48A C080MLC
  ( IM WITH MULTILEVEL CERVICAL DJD REFERRED FOR EVALUATION MYLOMALACIA AT C4-5 )
  (  LEVEL                                                                      )
  (                                                                             )
  (                                                                             )
  (                                                                             )
======================================================================
          ATTENTION: DO NOT INFORM INMATE OF FUTURE APPOINTMENT(S)

CONSULTANT REPORT:

S:   _(handwritten)_

O:   _(handwritten)_

A:   _(handwritten)_

P:   _(handwritten)_

CONSULTANT SIGNATURE: _____  DATE _/_/_   9-25-15
IF FOLLOW-UP/PROCEDURE RECOMMENDED  REQUESTED BY __/__/__

* CONSULTATION IS A RECOMMENDATION.  FINAL DETERMINATION WILL BE MADE BY THE
  INMATE'S NYSDOCS PHYSICIAN.
======================================================================

WHEN THIS FORM WAS PRINTED, NO SCHEDULED APPOINTMENT EXISTED FOR THIS REFERRAL.



**THE
LEGAL
AID
SOCIETY**

Civil Practice
Prisoners' Rights Project
199 Water Street
New York, NY 10038
(212) 577-3530
www.legal-aid.org

Dr. Frederick Bernstein
Facility Health Director
Green Haven Correctional Facility
594 Rte. 216
Stormville, N.Y. 12582

July 13, 2015

Blaine (Fin) V. Fogg
*President*

Seymour W. James, Jr.
*Attorney–in–Chief*

Adriene L. Holder
*Attorney–in–Charge*
Civil Practice

Re:    William Coke, 02B1082

Dear Dr. Bernstein:

I write concerning William Coke who has reported a number of serious and debilitating symptoms stemming from what he believes to be myelomalacia. Mr. Coke reports that prior to his diagnosis of myelomalacia, on August 14, 2015, senior medical staff at your facility diagnosed him with cervical and lumbar radicular nerve pain.

Mr. Coke reports that soon thereafter, in November of 2014, he received an MRI confirming the presence of myelomalacia. Sometime subsequent to the finding of myelomalacia, Dr. Clark reportedly made a number of diagnoses including muscular stress and arthritis, in seeming disregard of the MRI indicating the presence of myelomalacia. As a result of Dr. Clark's less severe diagnoses, Mr. Coke reports that as of May 22, 2015, the 30 milligrams of morphine which he previously received for his extremely painful condition has been discontinued.

This matter is of particular concern given that numerous other prisoners at Green Haven have reported insufficient pain management. Blanket decisions regarding pain management do not seem to comport with the individualized medical needs of each prisoner. Due to this and to the fact that Mr. Coke's underlying condition does not appear to have improved, I request that Mr. Coke be seen by a specialist who is authorized to treat myelomalacia if that remains an accurate diagnosis and that his pain management regimen be reinstated if deemed appropriate. Finally, as Mr. Coke reports that his present dosage of Naproxen may be causing an allergic reaction when combined with the Epzicom that he is presently prescribed, I ask that your attention be brought to his present medication regimen to ensure its safety.

Mr. Coke has not yet provided a medical release form. When we receive it from him, I will forward it you promptly. I look forward to hearing from you at your earliest convenience.

Sincerely,

Elias Shebar
*Legal Intern*



| | |
|---|---|
| NEW YORK STATE | **Corrections and Community Supervision** |

ANDREW M. CUOMO
Governor

ANTHONY J. ANNUCCI
Acting Commissioner

July 29, 2015

Elias Shebar
Prisoner's Rights Project
199 Water Street
New York, New York 10038

Re:   Coke, William  02B1082

Dear Mr. Shebar:

This letter is in response to your letter to me of 7/14/15 regarding William Coke 02B1082.

Mr. Coke had an MRI on 11/24/14. The radiologist noted that "There is a tiny focus of increased T2 signal intensity involving the spinal cord at the level of the C4-C5 disc. This is felt to represent a focus of myelomalacia". It is not considered clinically likely that that MRI finding is a source of pain for Mr. Coke.

Mr. Coke's primary care provider recently reevaluated the treatment regimen for Mr. Coke. It was determined that an adjustment in his medication was medically appropriate. Mr. Coke is being treated with medication for pain and has a pending appointment at the pain clinic. We will consider further adjustments to Mr. Coke's regimen based on the recommendations of the pain specialist.

Sincerely,

Fredel Bnt

Frederick Bernstein, MD
Facility Health Services Director
Green Haven Correctional Facility



**Westchester**
---MEDICAL CENTER---

Operative Report


NAME:  COKE, WILLIAM
MR#:  1640882
ADMIT DATE:   11/25/2015
SURGERY DATE:   11/25/2015
DISCHARGE DATE:
SURGEON:
BILLING NUMBER:  79319927

SURGEON:  Dr. P. Charles Garell.

RESIDENT ASSISTANT:  Michael Kim, M.D.

PHYSICIAN ASSISTANT:  Susan Paul, PA-C

SURGERY:  C4-C5 anterior cervical diskectomy and fusion.

PREOPERATIVE DIAGNOSIS:  Cervical radiculopathy.

POSTOPERATIVE DIAGNOSIS:  Cervical radiculopathy.

ANESTHESIA:  General endotracheal anesthesia.

FLUIDS:  1400 mL of crystalloid fluid.

ESTIMATED BLOOD LOSS:  50 mL.

URINE OUTPUT:  Not measured.

There were no specimens or complications.

INDICATIONS:  The patient is a 59-year-old male who has had over a year of
neck pain that radiates into both of his hands.  He states that sometimes
when he wakes up, he has numbness and weakness in both hands and arms.  On
MRI, he was found to have a very large C4-C5 disk osteophyte complex with
associated herniated disk causing compression of the thecal sac and
effacement of the CSF spaces.  Due to the patient's symptoms and
complaints and MRI finding, decision was made to take him to the operating
room to do a C4-C5 ACDF.  All risks including, but not limited to
infection, bleeding, CSF leak, paralysis and/or death and need for further

Signed electronically



Discharge Summary

NAME:   COKE, WILLIAM
MR#:   1640882
ADMIT DATE:   11/30/2015
DISCHARGE DATE:
BILLING NUMBER:   79391371

DISCHARGE DIAGNOSES:
1.   Esophageal tear.
2.   Dysphagia.

PROCEDURES PERFORMED DURING THIS HOSPITALIZATION:   On December 1st and on
December 14th, the patient had a barium swallow evaluation under
fluoroscopy.  On December 3, 2015, the patient had a PEG tube placed by
Dr. Rajdeo.  The patient had a general anesthesia on December 21, 2015 for
exploration of esophageal tear.

HISTORY OF PRESENT ILLNESS:   This is a 59-year-old male with HIV,
hypertension, diabetes mellitus, who had an anterior cervical diskectomy
and a fusion performed on November 25 by Dr. Garell.  He was subsequently
discharged to corrections and he returned on November 30 with a fever of
101 and difficulty swallowing.  He stated that his swallowing and gotten
worse since his surgery and his voice had also become softer.  He denied
any drainage from the wound or new weakness, numbness or tingling.  The
patient was evaluated in Westchester Medical Center's Emergency Room and
admitted to the neurosurgery service.  Of note, the patient is an inmate
in the Department of Corrections.

PAST MEDICAL HISTORY:   As above.

PAST SURGICAL HISTORY:   As above.

ALLERGIES:   HE IS ALLERGIC TO ACE INHIBITORS.

SOCIAL HISTORY:   He is incarcerated.  He denies alcohol, tobacco or drug
use.

DISCHARGE MEDICATIONS:   Usual antivirals, abacavir and lamivudine as well
as darunavir.  He also takes Norvasc, carvedilol, hydrochlorothiazide,
metformin, Norvir, Percocet, pravastatin and was discharged on Augmentin

Signed electronically



# Westchester
## — MEDICAL CENTER —

Discharge Summary

NAME:  COKE, WILLIAM
MR#:  1640882
ADMIT DATE:   11/30/2015
DISCHARGE DATE:
BILLING NUMBER:  79391371

875 mg twice a day until follow up in 2 weeks.

REVIEW OF SYSTEMS:  As above.

FAMILY HISTORY:  Noncontributory.

PHYSICAL EXAMINATION:  GENERAL:  The patient is awake and alert.  He is oriented x3.  He follows commands easily bilaterally.  His strength is intact bilaterally.  Sensation is likewise intact.  EXTREMITIES:  His peripheral pulses are bilaterally palpable.  SKIN:  Intact.  The patient's voice quality is much improved and is now at baseline.  The PEG site is healing well.

MOST RECENT LABORATORY RESULTS:  The white blood cells are 3.9.  The hemoglobin 11.0, hematocrit 32.4%; the platelet count 334,000.  The glucose is 125, the sodium 137, potassium 4.2, the chloride 105, bicarbonate 25.  The BUN is 20.  The creatinine is 0.78.

HOSPITAL COURSE:  The patient was admitted as outlined above on November 30th and had barium swallow the following day, which demonstrated an esophageal tear.  Dr. Rasamny of the ENT service was consulted and between him and Dr. Garell, they agreed on conservative management.  He was seen by the infectious disease service Dr. El Khoury, who initially started broad spectrum antibiotics and that was changed to Unasyn 3 grams q.6 hours with the recommendation to transition to oral Augmentin on discharge.  The patient was observed then over the next 2 weeks.  He had a PEG tube placed for nutrition on December 3 without incident.  The patient had a subsequent swallow evaluation, barium swallow on December 14th, which redemonstrated a tear.  Dr. Rasamny took the patient to the OR the following Monday, December 21st and he at that time under general anesthesia explored the wound, but there was no esophageal tear apparent.  As such he is recommending to maintain the patient n.p.o. and follow up in 2 weeks.  The patient will be following up with Dr. Garell and Dr. Rasamny in 2 weeks.  He will be given full written discharge instructions including followup care with his physicians, medication instructions, activity restrictions, and wound care instructions.


DICT: CHRISTOPHER MCGOVERN
DD: 12/23/15 11 54 AM
DT:12/23/2015 19:00:41/HN
Job#: 265085

===================== END OF DOCUMENT / CHANGE LOG FOLLOWS =====================

Signed electronically



Putnam Hospital Center
Speech and Language Pathology

Patient's Name: Coke, William                DOB: 6/13/1956

*Swallowing Recommendations*

**Aspiration Precautions:** ☒ YES   ☐ NO

**Diet/Feeding:** ☒ Oral   ☐ Supervision   ☒ Non-Oral  *Combination feeding*

**Food Consistency:** ☒ Pureed   ☐ Ground/Chopped
☐ Mechanical Soft   ☐ Regular

**Liquids:** ☒ Thin   ☐ H₂O Hydration Program
☐ Thickened (circle) Nectar  Honey thick   Pudding

**Presentation:** ☒ Cup   ☒ Spoon   ☐ Straw *No*

**Medications:** ☒ NPO   ☐ Applesauce (crushed/whole)   ☐ Water

**Positioning:** ☐ Sit Upright   ☐ Remain upright for 30-45 minutes after meals

**Treatment Plan:**
☒ Patient / Staff / Family education
  ☒ Results and recommendations were discussed with the patient/family
  ☐ Unable to provide education
  ☐ Other: _____

☐ Speech therapy recommended for:
  ☐ Oral stimulation / exercises   ☐ Therapeutic intervention for diet upgrade
  ☐ Monitoring tolerance of diet
  ☒ Teaching Compensatory Strategies:
    ☐ Small bite size   ☐ Head tilt to ____   ☐ Reclined to ____
    ☒ Head turned to *Left*   ☐ Chin tuck   ☒ Effortful swallow *"Hard Swallow"*
    ☐ Slow intake   ☐ Multiple swallows
    ☐ Other: _____

Comments: *Monitor your swallow. Request upgrade if tolerating more complex solids.*

_____

_____

Speech Language Pathologist: _____   Date: 1/25/16

FORM 3108 (7/11)

STATE OF NEW YORK
DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

FACILITY _____

## X-RAY REQUISITION AND REPORT

NAME _Cope   William_   DIN _02B1082_

DATE ORDERED _2/10/16_   HOUSING UNIT _inf_   WORK LOC. _____

DATE DONE _2/18/16_   DATE OF BIRTH OR AGE _6/13/56_

TECHNICIAN _BS_   URGENT _____   ROUTINE

PRECAUTIONS/ALLERGIES/RISKS _____

EXAMINATION _neck Xrays for neurosurg_

CLINICAL DIAGNOSIS/HISTORY _s/p neck dissection_

ORDERED BY DR. _____

Exam C-spine 5 views including lateral views in neutral, flexion &
extension positions  in open mouth odontoid shows normal vertebral
alignment maintained in both flexion & extension. Anterior surgical
spinal fusion C4-C5 with metallic plate & screws in place. Mild to
moderate end plate degenerative osteophyte formation C3-C7.  11mm soft
tissue calcification posterior to spinous process of C6. Normal C1-C2
relationship. No C ribs.
IMP:  S/P ANTERIOR SURGICAL CERVICAL SPINE FUSION C4-C5 WITH HARDWARE
IN PLACE IN SATISFACTORY POSITION.
        NORMAL CERVICAL ALIGNMENT.
        MILD TO MODERATE DEGENERATIVE CERVICAL SPONDYLOSIS.
        LIGAMENTUM FLAVUM CALCIFICATION SOFT TISSUES POSTERIOR LOWER NECK.
        SOME LIMITATION OF FULL RANGE OF FLEXION & EXTENSION.
        NO PRIOR STUDY.

REVIEWED BY M.D. _____/_____ DATE
□ NO ACTIONS REQUIRED AT THIS TIME
□ REFERRED TO CLINIC
□ FOLLOW UP SICK CALL TO BE ARRANGED BY PROVIDER
□ FOLLOW UP CALL OR LAB/X-RAY AS NEEDED
□ LABORATORY TEST OR OTHER STUDY AS FOLLOWS

R. Mueller, MD
RADIOLOGIST   2-19-16   DATE

DISTRIBUTION:   Original - Health Record   Copy - Radiologist   Copy - X-Ray Folder

FORM 3108 (7/11)

**STATE OF NEW YORK**
**DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION**

_OTO_

FACILITY

## X-RAY REQUISITION AND REPORT

NAME _Cete William_ DIN _02B1082_

DATE ORDERED _12/15/16_ HOUSING UNIT _____ WORK LOC. _____

DATE DONE _1-3-17_ DATE OF BIRTH OR AGE _6/13/52_

TECHNICIAN _____ URGENT _____ (ROUTINE)

PRECAUTIONS/ALLERGIES/RISKS _____

EXAMINATION _R back X rays_

CLINICAL DIAGNOSIS/HISTORY _____

ORDERED BY DR. _____

LS spine 4 views shows normal alignment. Straightening curvature. Moderate narrowing L5-S1 disc space. Mild tomoderate degenerative osteophyte formation throughtout lumbar spine. Remainder LS spine including both SI joints unremarkable.
IMP:  DEGENERATIVE LOWER LUMBAR DISC DISEASE L5-S1.
      MILD TO MODERATE DEGENERATIVE LUMBAR SPONDYLOSIS.
      MUSCLE SPASM.
      NO PRIOR STUDY.

REVIEWED BY (init.) _____ DATE
☐ NO ACTION IS REQUIRED AT THIS TIME
☐ REPORT TO SICK CALL
☑ FOLLOW UP WILL BE ARRANGED WITH PRIMARY PROVIDER
☐ FOLLOW UP WILL BE ARRANGED WITH A SPECIALIST
☐ NOTIFICATION FORM COMPLETED AND DISTRIBUTED

RJMueller, MD                    1-9-17
RADIOLOGIST                      DATE

DISTRIBUTION:  Original - Health Record       Copy - Radiologist       Copy - X-Ray Folder

```
2/08/17  9:06:00      NYS DEPARTMENT OF CORRECTIONAL SERVICES      PAGE      1
HSC4781                     HEALTH SERVICES SYSTEM
                        REQUEST AND REPORT OF CONSULTATION

NAME: COKE, WILLIAM J                     DIN: 02B1082  DOB: 06/13/1956
                                          CURRENT FAC: GRN HAVN GEN
REFERRING FAC  : GRN HAVN GEN             REFERRAL NUMBER: 16533628.01M
REFERRAL DATE  : 12/19/16 10:58A  TELEMED: N<N> REFERRAL TYPE  : INITIAL
TYPE OF SERVICE: OTOLARYNGOLOGY           REFERRAL STATUS; SCHEDULED
URGENCY OF CARE: ROUTINE                  INTERPRETER:

MEDICAL HOLD: NO    TYPE:     REASON CODE:     EXP.DATE:
TRANSPORTATION : N   WHEELCHAIR N   NURSE  N   AMBULANCE  N   LITTER  N   HCA
SENSORIAL IMPAIRMENT:
REFERRED BY: YELENA KOROBKOVA, MD         APPOINTMENT: 02/10/17   09:00A
REVIEWED BY: ROBERT BENTIVEGNA, MD        POS: MOUNT VERNON HOSPITAL
                                          PROV: HEMMERDINGER,STEVEN-OTO

REASON FOR CONSULTATION:                  USER: 12/21/16 02:11P C080YXK
 (   S/P C4-5 DISCECTOMY 11/25 & FUSION. STILL COM PLAI'NING ON DIFFICULTY   )
 (   SWALLOW FOOD AND MEDS NOW STARTED TO COMPLAIN ON PERIODIC EAR PAIN MOSTLU )
 (   RIGHT NEED SUGESTIONS ON FURTHER TREATMENT IF ANY AND IMAGING NO FINDING  )
 ( ON EXAM HE DOES HAVE TROUBLE SWOLLOWING PILL HAD SPEECH/SWALLOW PATHOLOGY   )
 ( TRAINING                                                                    )
=============================================================================
        ATTENTION: DO NOT INFORM INMATE OF FUTURE APPOINTMENT(S)
```

CONSULTANT REPORT:

S:

O:

A:



P:

CONSULTANT SIGNATURE: _____   DATE:

IF FOLLOW-UP/PROCEDURE RECOMMENDED - REQUESTED BY

* CONSULTATION IS A RECOMMENDATION.  FINAL DETERMINATION WILL BE MADE BY THE
  INMATE'S NYSDOCS PHYSICIAN.
=============================================================================

```
5/12/17  8:58:15      NYS DEPARTMENT OF CORRECTIONAL SERVICES      PAGE      1
HSC4781                        HEALTH SERVICES SYSTEM
                          REQUEST AND REPORT OF CONSULTATION

NAME: COKE, WILLIAM J                        DIN: 02B1082   DOB: 06/13/1956
                                             CURRENT FAC: GRN HAVN GEN
REFERRING FAC  : GRN HAVN GEN                REFERRAL NUMBER: 17135213.01M
REFERRAL DATE  : 03/31/17 01:32P  TELEMED: N<N> REFERRAL TYPE  : INITIAL
TYPE OF SERVICE: SPEECH THERAPY              REFERRAL STATUS: SCHEDULED
URGENCY OF CARE: ROUTINE                     INTERPRETER:

MEDICAL HOLD: NO     TYPE:      REASON CODE:     EXP.DATE:
TRANSPORTATION : N   WHEELCHAIR N   NURSE N   AMBULANCE N   LITTER N   HCA
SENSORIAL IMPAIRMENT:
REFERRED BY: YELENA KOROBKOVA, MD        APPOINTMENT: 05/15/17   10:00A
REVIEWED BY: ROBERT BENTIVEGNA, MD       POS: PUTNAM COMMUNITY HOSPITAL
                                         PROV: DEPT OF SPEECH THERAPY

REASON FOR CONSULTATION:                    USER: 03/31/17 01:32P C080YXK
 ( PT HAD NECK SURG 1,5 YEAR AGO STILL COMPLAINING ON PROBLEMS SWOLLOWING AND )
 ( EATING SEEN BY MILTIPLE SPECIALISTS SPEACH PATHOLOGY CONSULT WAS RECOMENDED )
 ( FOR EVAL AND POSS TREATMENT PLANING                                        )
 (                                                                            )
 (                                                                            )
=================================================================================
          ATTENTION: DO NOT INFORM INMATE OF FUTURE APPOINTMENT(S)
```

CONSULTANT REPORT:

S:  Pt. seen c̄ 1 C.O. Officer, Pt. alert, conversant + cooperative.

O:  Pt. participated fully in swallow evaluation.

A:  Clinical Swallow Evaluation complete. Education on swallow mechanism complete c̄ good return of info.

P:  Full report c̄ findings + recommendations to follow.
    (1) Consider F/u Modified Barium Swallow Study

CONSULTANT SIGNATURE: _____ CCC-SLP   DATE: 05/15/2017
IF FOLLOW-UP/PROCEDURE RECOMMENDED - REQUESTED BY __ / __ / __

```
* CONSULTATION IS A RECOMMENDATION.  FINAL DETERMINATION WILL BE MADE BY THE
  INMATE'S NYSDOCS PHYSICIAN.
=================================================================================
```

*ADA - Difficulty*
#22 *Swallowing* Grievance Complaint          AUB-73321-17
*Need more Time*
*To Eat*   Auburn Correctional Facility

William Coke- 02B1082  C-16-11 Industry Program          12/12/17
                RECEIVED BY:  COMPLAINT:
                AUBURN I.G.R.C.
HARRASSMENT: ON   12/18/17

- On Sept. 14, and 25, 17, I was denied Sick-call because my Cell
would not open.
                                                              Von-Doc
- On 12/8/17, I was made to throw away my fish and rice by Sgt. Maxwell
because it was in a plastic bag.
- On 12/12/17 Because we are made to eat last, and the Special Diet
ran out of food, I almost choked off the Beef Cubes trying to eat.
- Even in Industry, I am forced to take chances to choke off my food
due to documented Swallowing problems.

  I developed swallowing problems from an operation while at Green
Haven C.F. and these and other Medical records were not included in
my medical file, in which I had to present Dr. Geer with a copy of
my medical problems because they were not disclosed in my medical
file and when I tried to make this known in a form of a grievance my
complaint was tampered with, and removed.

                        Action Requested:

  Since I can't take a plastic bag to the Mess-hall to bring my food
out and eat it so I won't choke because of the time it takes for me
to properly chew and swallow, and I want this medical problem to be
addressed, because my swallowing is not getting any better.

                                _____
                                William Coke

# INMATE GRIEVANCE COMPLAINT

Grievance #: 73321-17

Name: Coke, William

DIN: 02B1082

RECEIVED BY:
AUBURN I.G.R.C.
ON ___12/22/17___

Housing Unit: C-16-11

Date of Response: 12/19/17 (date received by this respondent)

Complaint: Difficulty swallowing, needs more time to eat

Inmate wishes evaluation of his medical problem. The only time I saw this inmate was on 11/8/17 at which time he presented with low back pain.

If an inmate wants evaluation of a medical issue by a provider, he needs to follow the sick call procedure using the appropriate sick call slip which can be obtained from the block officer. A grievance is NOT the appropriate was to address medical concerns that no medical staff is even aware of. Please see enclosed form 3102 which every inmate signs on entry into DOCCS.

The inmate's medical issue will be addressed when he uses the proper procedure.

Deborah A. Geer, MD

Facility Health Services Director

FORM #1312E (REVERSE) (9/12)

**Response of IGRC:**

Upon the grievant's IGRC hearing, the grievant stated due to a surgery that was performed causes the grievant to have difficulty swallowing. The grievant claims that the swallowing diagnosis was not in his medical records and was disclosed, therefore his medical issue is not being addressed properly. Grievant claims his medical issue is not getting better, in which he needs some type of assistance to accommodate his medical need. The IGRC agree that the grievant should be allowed feed up trays, so he does not have to rush in the messhall to eat. The IGRC also agree that the grievant's medical needs and health concerns should be addressed properly and in a timely fashion. Grievance is granted to that extent.

Date Returned to Inmate: _____/___/_____          IGRC Members: _____

Chairperson: _____          _____

Return within 7 calendar days and check appropriate boxes.*

☐ I disagree with IGRC response and wish to appeal to Superintendent.

☑ I agree with the IGRC response and wish to appeal to the Superintendent.

☐ I have reviewed deadlocked responses. Pass-Thru to Superintendent.

☐ I apply to the IGP Supervisor for review of dismissal.

Signed: _____          1/2/18
                        Grievant                                            Date

_____          _____
Grievance Clerk's Receipt                              Date

**To be completed by Grievance Clerk.**

Grievance Appealed to the Superintendent: _____
                                                                        Date

Grievance forwarded to the Superintendent for action: _____
                                                                                    Date

* An exception to the time limit may be requested under Directive #4040, section 701.6(g).

| NEW YORK STATE **Corrections and Community Supervision** | GRIEVANCE NO. AUB - 73321 - 17 | | DATE FILE 12/18/2017 |
|---|---|---|---|
| | FACILITY **AUBURN** | | POLICY DESIGNATION A |
| **INMATE GRIEVANCE PROGRAM** | TITLE OF GRIEVANCE ADA - DIFFICULTY SWALLOWING NEED MORE TIME TO EAT | | CLASS CODE 22.0 |
| **SUPERINTENDENT** | SUPERINTENDENT'S SIGNATURE | | DATE 1/12/2018 |
| GRIEVANT **Coke      W.** | DIN **02-B-1082** | HOUSING UNIT **C-16-11** | |

The Superintendent upholds the findings of the IGRC.  Grievant has not presented this issue to medical.  Grievant is advised to utilize established sick call procedures to address his medical needs.  Appeal is granted to that extent.

### APPEAL STATEMENT

if you wish to refer the above decision of the Superintendent please sign below and return this copy to you Inmate Grievance Clerk.  You have seven (7) calendar days from receipt of this notice to appeal.*  Please state why you are appealing this decision to C.O.R.C.

I agree with these findings however, this is a known diagnosed condition(s), removed from my Medical file!

_____                    1/16/2018
GRIEVANT'S SIGNATURE                              DATE

_____                    _____
GRIEVANCE CLERK'S SIGNATURE                        DATE

*An exception to the time limit may be requested under Directive #4040, Section 701.6 (g).
FORM 2133 (02/15)

| | Grievance Number<br>AUB-73321-17 | Desig./Code<br>I/22 | Date Filed<br>12/18/17 |
|---|---|---|---|
| NEW YORK STATE **Corrections and Community Supervision** | Associated Cases | | Hearing Date<br>4/24/19 |
| ANDREW M. CUOMO<br>Governor    ANTHONY J. ANNUCCI<br>Acting Commissioner | Facility<br>Auburn Correctional Facility | | |
| **INMATE GRIEVANCE PROGRAM**<br>**CENTRAL OFFICE REVIEW COMMITTEE** | Title of Grievance<br>Difficulty Swallowing/Not Enough Time To Eat | | |

## GRIEVANT'S REQUEST UNANIMOUSLY ACCEPTED IN PART

Upon a full hearing of the facts and circumstances presented in the instant case, and upon recommendation of the Division of Health Services, the action requested herein is accepted in part.

CORC notes that the grievant's complaint has been reviewed by the Division of Health Services' staff who advise that a complete investigation was conducted and that he is receiving appropriate treatment. He was seen at sick call on 9/7/17 and 10/19/17, and refused sick call on 9/5/17, 9/14/17, and 9/22/17. In addition, there is no record that he requested sick call on 9/17/17 or 9/25/17. CORC also notes that he reported difficulty swallowing following a prior surgical procedure, and that he has had no recent complaints. It is noted that there is no record of the grievant filing a grievance alleging tampering of his medical records, and that grievances received in the IGRC Office are processed in accordance with Directive #4040.

CORC also notes that inmates are afforded the opportunity to have at least 20 minutes of dining time for each meal, in accordance with ACA standards, and that only bread, milk, and those desserts which can be carried in the hand are permitted to be removed from the messhall, as outlined in FOM #S10-02. Plastic bags are not permitted to leave the messhall.

With respect to the grievant's appeal, CORC finds insufficient evidence of improper care or malfeasance by staff. CORC advises him that the accuracy of medical records can be challenged in accordance with HSPM Item #4.02, and to address additional medical concerns via sick call for the most expeditious means of resolution.

CMV/

---------------------------------------------------------------------------------------------------
---------------------------------------------------------------------------------------------------

This document has been electronically signed by Shelley M. Mallozzi

to ⟶  William Cola
02B1082
C-16-11 ✓
1/15/18

From Dear F.O.I.L. officer

Sometime ago I wrote to you inquiring
about X-rays taken on Aug. 14, 2014
and since you have sent me everything
but the date I've requested.

How do I go about getting that X-ray
dog diagnosis?

Thank you

William Cola

They would have come from Medical, so write them
and tell them the above.
FOXL.



**ANDREW M. CUOMO**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

To: Coke, William   02B1082      C-16-11

From: Medical Records

Date: February 12, 2018

RE: Record request


     This is an official letter stating that we do not have the x-ray records from Aug. 14, 2014. While there are records available from that date and Medical center, no x-ray reports are available. However, the information that is available has been copied if you would like that instead.

From: William Coke
      02B1082
      C-16-11



To: PROGRAM COMITTEE
    Dr. Geer
    Mrs. Porter

## TO ALL PARTIES OF CONCERN:

The herein exhibits pertain to my medical condition as a result of an injury and the permanent damage created by such. I am now in need to protect and preserve what's left of my health, mental well-being and my mobility, and I'm in need of assistance to make this need happen.

Some time ago around Nov.2017, I was told by the Nurse at Sick-call to write to the program comittee and inform them of my need to go to another Shop these injuries need. I am in need of an Industry Shop that will be conducive to my medical injuries. As of Friday 2/9/18, I have come to the reality that my body cannot contend with the demands required to function in Blanking... I am distracted by the dizzyness, shortness of breath and constant bending, heavy lifting and pay attention. The tiny mistakes I've made have come to interfere with a quality plate. Unfortunately, I didn't write this request sooner. I like the shop, the People and even Supervision. However, my health requires that I am in need to address my health issues.

I am in need of some time off, with hopes that Dr. Geer can help me, and the stressor I'm dealing with can be helped with therapy and/or meds. So that when I return to work I can be placed with a position that will be conducive to my health.

Respectfully,

William Coke



# Corrections and Community Supervision

ANDREW M. CUOMO
Governor

ANTHONY J. ANNUCCI
Acting Commissioner

## MEMORANDUM

TO: *Coke, William 02B1082    C-16-11*

FROM: M. Pettigrass, SORC
Program Committee Coordinator

SUBJECT: Programs – Your ~~Letter Dated~~ *program Committee appearance on 2/15/18*

DATE: *2/15/18*

_____ You must remain in your job/program for 90 days before you can request a change.

_____ You are on the list to see the Program Committee and will be called when your name is reached.

_____ The only part-time jobs/programs we offer are Vocational, School, ASAT, ART, Transitional Services II and III, State Shop, Storehouse, Commissary, Barber, Laundry, Maintenance, Evening only Messhall, Admin. Porter, TA jobs, Law Library, General Library.

_____ After you complete orientation you will be scheduled to see Program Committee. We'll discuss your programs options then.

_____ You are currently on the waiting list for _____ and will be assigned when your name is reached on the list.

_____ What shift are you interested in _____?

_____ Effective _____ you'll be on the _____ payroll.

_____ You cannot be assigned to _____ because you are already in a part-time/I mod job/program. You cannot be assigned a full-time and part-time job/program at the same time.

_____ You are already on the Vocational _____ waiting list. You can be on one Vocational waiting list at a time. Which one do you want to be on?

_____ Effective _____ you will be off the _____ payroll due to _____

_____ I cannot remove/switch you from Vocational/School at this time without the approval of the Vocational/Academic Supervisor. Speak to your instructor.

__X__ Other: *I spoke with Mr. Southwood (Industry Superintendent) today about your request to switch shops within Industry. You must contact him directly and explain to him why you are requesting to move. I can not change your shop. You must write to.*

*Mr. W. Southwood*

 **NEW YORK STATE** | **Corrections and Community Supervision**

ANDREW M. CUOMO
Governor

ANTHONY J. ANNUCCI
Acting Commissioner

April 11, 2018

Mr. William Coke
02B1082
Auburn Correctional Facility
135 State Street
Auburn, NY  13024-9000

Dear Mr. Coke:

Deputy Commissioner McKoy has referred your recent correspondence regarding transfer, to me for response.

Your transfer history indicates you arrived at Auburn Correctional Facility on August 29, 2017, and are currently in your area-of-preference. You are a maximum security inmate and must remain in your area-of-preference for at least one year before you can be reviewed for a consideration of another area-of-preference transfer.  You will be reviewed semiannually to determine transfer eligibility.  Should you meet transfer eligibility requirements, your assigned Offender Rehabilitation Coordinator will advise you during your first semiannual review after September 1, 2018.

You should discuss any additional transfer issues with your assigned Offender Rehabilitation Coordinator, who is in the best position to advise you regarding these matters.

Sincerely,

Anne Marie McGrath
Associate Commissioner

cc:  Superintendent - Auburn C.F.
     Inmate File
     Reference # 20180220-082649-LAL

```
7/11/18  7:37:27      NYS DEPARTMENT OF CORRECTIONAL SERVICES       PAGE      1
HSC4781                       HEALTH SERVICES SYSTEM
                        REQUEST AND REPORT OF CONSULTATION

NAME: COKE, WILLIAM J                    DIN: 02B1082   DOB: 06/13/1956
                                              CURRENT FAC: AUBURN GENER
REFERRING FAC  : AUBURN GENER        REFERRAL NUMBER: 18146248.01M
REFERRAL DATE  : 04/09/18 09:52A  TELEMED: N<N>  REFERRAL TYPE  : INITIAL
TYPE OF SERVICE: ORTHOPEDICS-OTHER       REFERRAL STATUS: SCHEDULED
URGENCY OF CARE: ROUTINE                 INTERPRETER:

MEDICAL HOLD: NO    TYPE:      REASON CODE:     EXP.DATE:
TRANSPORTATION : N  WHEELCHAIR  N  NURSE  N  AMBULANCE  N  LITTER  N  HCA
SENSORIAL IMPAIRMENT:
REFERRED BY: LAURA OSIKA-MICHALES, NP     APPOINTMENT: 07/13/18    08:15A
REVIEWED BY: DEBORAH GEER, MD                 POS: STATE UNIVERSIIY UPSTATE
                                             PROV: DEPT OF ORTHOPEDICS

REASON FOR CONSULTATION:              USER: 04/09/18 09:52A C010LXO
( 61 YR OLD WITH LUMBAR RADICULOPATHY BILATERALLY. HAS UNDERWENT PT AND IS O )
( N NSAIDS WITH LITTLE RELIEF. PLEASE EVAL AND TX AFTER MRI OF LUMBAR SPINE P )
( ERFORMED                                                                   )
(                                                                            )
(                                                                            )
==============================================================================
        ATTENTION: DO NOT INFORM INMATE OF FUTURE APPOINTMENT(S)
```

CONSULTANT REPORT:

_____ No action
_____ F/u appt
_____ Procedure
_____ New labs
_____ New consult
_____ Script

Date 7/13/18   Signature _____

S: LBP for years. LLE radiculopathy. ®

O: BLE: 5/5 strength. Sensation intact. WNL

A: 62M w/ chronic low back pain and radiculopathy.

P: Recommend pain management evaluation. No urgent surgical intervention. No follow up needed.

CONSULTANT SIGNATURE _____   DATE: 7/13/18

IF FOLLOW-UP/PROCEDURE RECOMMENDED - REQUESTED BY ___ / ___ / ___

```
* CONSULTATION IS A RECOMMENDATION.  FINAL DETERMINATION WILL BE MADE BY THE
  INMATE'S NYSDOCS PHYSICIAN.
==============================================================================
```

Co¥ee

1082          From          oec Christopher

-45

Date
3/15/19

r was approved 11/20/18.

transferred when Albany

priate. Please be patient.

Signed _____

Date

Signed _____

```
5/04/18  7:21:12      NYS DEPARTMENT OF CORRECTIONAL SERVICES      PAGE      1
HSC4781                     HEALTH SERVICES SYSTEM
                        REQUEST AND REPORT OF CONSULTATION
```

NAME: COKE, WILLIAM J                          DIN: 02B1082   DOB: 06/13/1956
                                               │  CURRENT FAC: AUBURN GENER
REFERRING FAC  : AUBURN GENER                  REFERRAL NUMBER: 18146244.01M
REFERRAL DATE  : 04/09/18 09:51A  TELEMED: N<N> REFERRAL TYPE  : INITIAL
TYPE OF SERVICE: MAG.RESON.IMAG.-BACK          REFERRAL STATUS: SCHEDULED
URGENCY OF CARE: ROUTINE                       INTERPRETER:

MEDICAL HOLD: NO    TYPE:    REASON CODE:    EXP.DATE:
TRANSPORTATION : N   WHEELCHAIR N   NURSE  N   AMBULANCE  N   LITTER  N   HCA
SENSORIAL IMPAIRMENT:
REFERRED BY: LAURA OSIKA-MICHALES, NP         APPOINTMENT: 05/08/18   06:45A
REVIEWED BY: DEBORAH GEER, MD                 POS: STATE UNIVERSITY UPSTATE
                                              PROV: DEPT OF RADIOLOGY/DIAG IM

REASON FOR CONSULTATION:                      USER: 04/09/18 09:51A CO1OLXO
 ( 61 YR OLD WITH CHRONIC LOWER BACK PAIN WITH RADICULOPATHY DOWN BOTH LEGS.  )
 ( HAS UNDERWENT A FULL SESSION OF PT WITH MINIMAL RESULTS. CURRENTLY ON NAPRO )
 ( XEN WITH LITTLE RELIEF.  XRAY OF LS SPINE DONE 1/3/17 REVEALS DJD L5-S1, MI )
 ( LD TO MOD SPONDYLOSIS.  PLEASE PERFORM MRI OF LS SPINE WITH AND WITHOUT CON )
 ( TRAST                                                                      )
==============================================================================
            ATTENTION: DO NOT INFORM INMATE OF FUTURE APPOINTMENT(S)

CONSULTANT REPORT:

S:          _MRI completed. Report to follow_

O:
                    ____ No action
                    ____ F/u appt
                    ____ Procedure        ort RBD
                    ____ New labs    (P)   5/9/18
A:                  ____ New consult
                    ____ Script           com #448
                    Date 5/17/18 Signature _____

P:

CONSULTANT SIGNATURE _____ (MR)      DATE: 5/8/18
IF FOLLOW-UP/PROCEDURE RECOMMENDED - REQUESTED BY __ / __ / __

* CONSULTATION IS A RECOMMENDATION.  FINAL DETERMINATION WILL BE MADE BY THE
  INMATE'S NYSDOCS PHYSICIAN.
==============================================================================

NAME: COKE, WILLIAM J                     DIN: 02B1082    DOB: 06/13/1956
                                          CURRENT FAC: AUBURN GENER
REFERRING FAC  : AUBURN GENER             REFERRAL NUMBER: 18289814.01M
REFERRAL DATE  : 07/13/18 12:58P  TELEMED: N<N>  REFERRAL TYPE   : INITIAL
TYPE OF SERVICE: PAIN THERAPY             REFERRAL STATUS: SCHEDULED
URGENCY OF CARE: ROUTINE                  INTERPRETER:

MEDICAL HOLD: NO    TYPE:    REASON CODE:    EXP.DATE:
TRANSPORTATION : N   WHEELCHAIR  N  NURSE  N  AMBULANCE  N   LITTER  N   HCA
SENSORIAL IMPAIRMENT:
REFERRED BY: RICHARD SLAGLE, FNP          APPOINTMENT: 02/05/19   11:10A
REVIEWED BY: DEBORAH GEER, MD             POS: HARRISON CENTER (OTHER)
                                          PROV: PAIN MANAGEMENT

REASON FOR CONSULTATION:                  USER: 07/13/18 12:58P C010RHS
( 62 Y/O MALE WITH MILD DEGENERATIVE SCOLIOSIS AND LOSS OF LUMBAR LORDOSIS, A )
( LSO BILATERAL FORAMINAL STENOSIS OF AT L3-S1. ORTHO RECOMMENDS PAIN CLINIC  )
( REFERRAL. REQUESTING PAIN SPECIALIST EVALUATE AND TREAT LUMBAR PATHOLOGIES. )
(                                                                             )
(                                                                             )
===============================================================================
          ATTENTION: DO NOT INFORM INMATE OF FUTURE APPOINTMENT(S)

CONSULTANT REPORT:

S: Lumbar Radiculopathy due to lumbar disc herniation
   leading to multilevel NF stenosis

O: 4/5 strength in bilateral LEs            ___ No action
   Sensation intact                         ___ F/u appt
   ROM maintained                           ___ Procedure
                                            ___ Review    (8)
A: lumbar radiculopathy                     ___ New consult
                                            ___ Script
                                            Date 1/20/19   Signature R Taylor

P: Lumbar epidural steroid injection @ L5/S1
   continue medications as written

CONSULTANT SIGNATURE: _____    DATE: 2/5/19
IF FOLLOW-UP/PROCEDURE RECOMMENDED / REQUESTED BY __ / __ / __

* CONSULTATION IS A RECOMMENDATION.  FINAL DETERMINATION WILL BE MADE BY THE
  INMATE'S NYSDOCS PHYSICIAN.
===============================================================================

(#06) Warts To Participate
In Masters Program
@ Sing Sing CF

William Coke
02B1082
C-16-11
3/5/18

RECEIVED BY:
AUBURN I.G.R.C.
ON  3/13/18

(AUB-23860-18)

UNRESOLVED GRIEVANCE:

Re: Masters Program at Sing-Sing Corr. Fac.

On three attempts (2004, 2007 and 2014) I have tried to enroll into the above program, and the responses have all been the same. irregaurdless of being academically qualified, and when considering the injuries inflicted; which has resulted in loss of prior skills t that grievant can no longer par-take(Rehabilitation Specialist) and the physical tolerance needed to work in Industry. It's only reasonable to let grievant retrain in the area of study he is qualified in due to these injuries.

When this matter was addressed at the I.G.R.C. at Green Haven on Dec.22,2014 grievant was told that his issue was not grievable. However, a recent discovery was made on Sat. 3/3/18 at the Law Library at Auburn Corr. Fac. Under Correction Law 701.3(3),(e) The policies, rules and procedures of any program or procedure **is grievable** and to avoid Court intervention based upon this indifference, discrimination and grievant's right under the 1st Amendant and NY Const. this matter is being presented with hopes of being enrolled.

Upon speaking with various Correctional Counselors at Green Haven and Auburn C.F. All of the responses have been the same "Your con-viction has nothing to do with enrollment into the Masters program... When you get to Sing-Sing you can enroll" . Contrary to Jeff Mckoy's written assertion. On Feb.12,18 a letter of reconsideration was sent to him based upon grievant's failing health and since there has been

| | | AUB - 73860 - 18 | | 3/13/2018 |
|---|---|---|---|---|
| **Corrections and Community Supervision** NEW YORK STATE | FACILITY **AUBURN** | | | POLICY DESIGNATION **I** |
| **INMATE GRIEVANCE PROGRAM** | TITLE OF GRIEVANCE WANTS TO PARTICIPATE IN MASTERS PROGRAM @ SING SI | | | CLASS CODE **06.0** |
| **SUPERINTENDENT** | SUPERINTENDENT'S SIGNATURE | | | DATE **4/9/2018** |
| GRIEVANT **Coke     W.** | DIN **02-B-1082** | | HOUSING UNIT **C-16-11** | |

**The Superintendent upholds the findings of the IGRC. If grievant gets transferred to Sing Sing CF, he may apply for the New York Theological Seminary's Master's of Professional Studies Program. Appeal is granted to that extent.**

The above response supports what the Acting Commissioner has declared. When Mr. Annucci placed the responsibility upon the prisoner to make-up their individual plan of rehabilitation, this grievant could have been completed the Master's Course a long time ago. This response also support what Corrections Counselor's have been saying. Your crime has nothing to do with your enrollment, why even the Education Supervisor, Mrs. Hollman referred grievant to this Program and based upon grievant's deteriorating condition, loss of aquired skills and his history of prison Programs offered. He is well qualified for the program and the program will suffice the loss of aquired skills.

Unfortunately, Mr. Jeff McKoy has taken it upon himself to apply a decree contrary to the Commissioner and the Policies and guidelines designed for rehabilitation. This Due Process violation becomes a

**APPEAL STATEMENT**

If you wish to refer the above decision of the Superintendent please sign below and return this copy to you Inmate Grievance Clerk. You have seven (7) calendar days from receipt of this notice to appeal.* Please state why you are appealing this decision to C.O.R.C.

deliberate act of Discrimination, resulting in Minsterial Neglect.

| | |
|---|---|
| GRIEVANT'S SIGNATURE | 4/10/18 DATE |
| GRIEVANCE CLERK'S SIGNATURE | DATE |

*An exception to the time limit may be requested under Directive #4040, Section 701.6 (g).
FORM 2133 (02/15)

| NEW YORK STATE | Corrections and Community Supervision | AUB-73860-18 | 1/6 | 03/13/18 |
|---|---|---|---|---|
| | | Associated Cases | | Hearing Date 07/31/19 |
| ANDREW M. CUOMO Governor | ANTHONY J. ANNUCCI Acting Commissioner | Facility Auburn Correctional Facility | | |
| INMATE GRIEVANCE PROGRAM CENTRAL OFFICE REVIEW COMMITTEE | | Title of Grievance Transfer To Participate In School | | |

## GRIEVANT'S REQUEST UNANIMOUSLY ACCEPTED IN PART

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby accepted only to the extent that CORC upholds the determination of the Superintendent for the reasons stated.

CORC notes that the grievant was approved for an area of preference transfer on 11/20/18 and was transferred to Sing Sing CF on 5/31/19. CORC further notes that there is no record of him applying to participate in NYTS Master's Degree program since his transfer into the facility.

CORC asserts that Correction Law grants DOCCS the discretion to transfer inmates between its correctional facilities, and inmates are not entitled to house where they choose.

With respect to the grievant's appeal, CORC finds no malfeasance by staff and advises him to address further transfer and program concerns to his assigned ORC.

TAB/

-------------------------------------------------------------------
-------------------------------------------------------------------

This document has been electronically signed by Shelley M. Mallozzi

AuB-7386078

William Coke
02B1082
Auburn Corr. Fac.
P.O. Box 618
Auburn, New York 13024
Feb. 12, 18

Jeff McKoy
DEPUTY COMMISSIONER
PROGRAM SUPERVISION
DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION
THE HARRIMAN STATE CAMPUS- BLDG. 2
ALBANY, NEW YORK 12226-2050

Dear Sir,

   I am writing to you about an important matter pertaining to my health and the need to be transferred to Sing-Sing Correctional Facility to attend the Masters program:

- I have applied aprox. 3 times and Dr. Hunt explained that I was accepted for enrollment and that my application remains on file to this very day.

- I have spoken to a many of Correction Counselors and they all have responded the same way, my conviction has nothing to do with my attendance of the Master's program and if I were to get there I would have no problem enrolling.

- Since 2015, I now function with a metal clamp holding my neck and spine together, difficulty swallowing my food, walking problems and I am in need of another operation; to place a metal rod in my back and working in industry can no longer be tolerated with.

- I am in need of being retrained, otherwise I will not only be a burden, but I will be dependant upon the State. This is a total contradiction of the State's purpose of rehabilitation.

- The State has already judged me and passed it's punishment, these extra denials and exclusions from programs funded by the government create violations of discrimination and indifference and both

*Aub-73860-18*

violations fall outside of Penological interest. I have no tickets, since 2007, I was sent to a disciplinary prison where fights erupt like wild-fires and I can't protect myself. I should be in a Max.B/ Medium jail. I stand-out like a sore thumb.

My health requires that I be retrained and as Deputy Commissioner Program Supervisor, I pray that you reconsider my attendence at Sing-Sing Correctional Facility, and since this issue is non-grievable I am writing you based on my sole purpose to preserve what's left of my health and to remain independant. Your response is very important to me, because this is the only means in which I have to maintain my independence and only you can make that happen.

Respectfully,

William Coke



*Master of Professional Studies*

Rev. Dr. Edward L. Hunt, Program Director
## New York Theological Seminary
Sing Sing Correctional Facility
354 Hunter Street • Chapel Basement North
Ossining, New York 10562-5442
914 • 941 • 0108 / Ext. • 4860

July 9, 2013

William Coke #02-B-1082
Green Haven Correctional Facility
594 Route 216
Stormville, NY 12582

*AuB-73860-18*

**REGARDING:**        **MPS APPLICATION**

Dear Mr. Coke:

New York Theological Seminary appreciates your inquiry regarding the Master of Professional Studies program at Sing Sing Correctional Facility.    Enclosed is an application to assist you with your academic pursuits.

Please be advised that NYTS does not accept incomplete applications.    Applications that are not complete will be returned immediately.

In the spirit of shalom,

Dr. E. L. Hunt, Program Director



STATE OF NEW YORK
### DEPARTMENT OF CORRECTIONS
### AND COMMUNITY SUPERVISION
THE HARRIMAN STATE CAMPUS — BUILDING 2
1220 WASHINGTON AVENUE
ALBANY, N.Y. 12226-2050

**ANTHONY J. ANNUCCI**
ACTING COMMISSIONER

**JEFF MCKOY**
DEPUTY COMMISSIONER
PROGRAM SERVICES

May 8, 2013

*AuB-73860-18*

Mr. William Coke
02B1082
Green Haven Correctional Facility
594 Route 216
Stormville, New York 12582-0010

Dear Mr. Coke:

This is in response to your letter dated April 18, 2013, regarding college programs within the New York State Department of Corrections and Community Supervision.

College courses are available on a correspondence basis to offenders who possess a verified High School Diploma or Equivalency. Offenders and/or their families must assume the financial obligations associated with taking these courses.

I suggest that you contact Ms. Ellert, Education Supervisor at Green Haven Correctional Facility, who can provide you with the necessary information regarding these courses.

The Department's computerized record keeping system indicates that you had attained a Bachelor's Degree prior to your participation in the Rising Hope Certificate in Ministry & Human Services Program. For further study, you may wish to consider the New York Theological Seminary's Masters of Professional Studies Program at Sing Sing Correctional Facility.

There is an application process you must go through. In order to be considered for this program, you must apply to the New York Theological Seminary through Reverend Hunt, Director of the program at Sing Sing. After you are accepted by the New York Theological Seminary, your name is submitted to the Department of Corrections and Community Supervision for further review to determine if you meet Departmental eligibility criteria.

If you have any additional questions regarding this program, please contact the Chaplain's Office at Green Haven Correctional Facility.

Sincerely,

*Linda Hollmen*

Linda Hollmen
Director of Education

cc:    Supt./Green Haven C.F.
       Chaplain/Green Haven C.F.
       Ed. Supv./Green Haven C.F.
       Central Files



STATE OF NEW YORK

**DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION**

THE HARRIMAN STATE CAMPUS – BUILDING 2

1220 WASHINGTON AVENUE

ALBANY, N.Y.  12226-2050

**ANTHONY J. ANNUCCI**
ACTING COMMISSIONER

**JEFF MCKOY**
DEPUTY COMMISSIONER
PROGRAM SERVICES

December 11, 2014

*AuB-73860-18*

Mr. William Coke
02B1082
Green Haven Correctional Facility
594 Rt. 216
Stormville, NY 12582

Dear Mr. Coke:

This is in response to your recent letter regarding facility programming.

An inmate's programming needs are assessed based on a thorough review of their history.  Your progress is then evaluated every three months during a Case Plan review conducted with the assistance of your assigned Offender Rehabilitation Coordinator (ORC). Program assignments within a specific facility are the responsibility of the Program Committee Chairperson.  Any further questions or concerns in relation to this matter should be addressed to your assigned ORC, who is in the best position to assist you.

You are encouraged to maintain your positive record of behavior and participate in all recommended programs.

Sincerely,

Jeff McKoy
Deputy Commissioner
Program Services

cc:     Superintendent – Green Haven C.F.
         Central Files

*Please Return*

# NEW YORK
# THEOLOGICAL
# SEMINARY

*...continuing The Biblical Seminary in New York*

*AuB-73860-18*

August 14, 2014

Mr. William J. Coke          02-B-1082
Green Haven, C.F.
P.O. Box 4000
Stormville, New York 12582

Dear Mr. Coke,

Thank you for your letter dated August 9, 2014.  You expressed yourself very well and I thank you for that...however I think that you are greatly misinformed; I did not reject you nor have I ever rejected anyone from entering the program.

We are restricted as to who we can accept into the program.  So please dear sir investigate why you were rejected.  Neither I nor NYTS have the right to look into your records only DOCCS can do that; I am sorry for your hurt, but I didn't hurt you.

Point, we accept every application and we submit the names to DOCCS and they inform us who is acceptable.  Your application is on file and if whatever held you back is cleared up we will be willing to accept your very humble spirit into the program.

Sincerely,

Dr. Edward L. Hunt

75 Riverside Drive, Suite 500
ew York, New York 10115
el: 212-870-1211
ax: 212-870-1236
ww.nyts.edu

AuB-73860-18

In the response the denial, the Education Supervisor blames the nature of my Crime, the State has already punished me and prison has become the process of rehabilitation and Since Counseling is my strong point, Such rehab has been denied based Solely upon my Conviction, I'm Sure that I am not the only Inmate with a Sex Crime. I believe that this is discrimination, Yet I Can work in Industry, Interact w/ females and Yet no Complaints about me are made as with my Conviction of actual Innocence (but thats another issue)

The purpose of this request is to Challenge the ~~fairness~~ trueness, I've searched the law Library Terminal and I Can't find such a thing. Am I rightly being denied based upon a legal rule or Sjik? Your response is very important to me.

Thank you for your Valued time and Consideration

Sincerely

William Cole



STATE OF NEW YORK

**DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION**

THE HARRIMAN STATE CAMPUS – BUILDING 2

1220 WASHINGTON AVENUE

ALBANY, N.Y. 12226-2050

**ANTHONY J. ANNUCCI**
ACTING COMMISSIONER

**JEFF MCKOY**
DEPUTY COMMISSIONER
PROGRAM SERVICES

October 2, 2014

*Aub-73860-18*

Mr. William J. Coke
02B1082
Green Haven Correctional Facility
594 Route 216
Stormville, NY 12582

Dear Mr. Coke:

Acting Commissioner Annucci has asked me to respond to your letter to him regarding a transfer to Sing Sing Correctional Facility to participate in the New York Theological Seminary's Master's of Professional Studies Program.

Due to the nature of your instant offense, you do not meet the criteria for participation in this program.

If you have any additional questions regarding transfers, please address them directly with your assigned Offender Rehabilitation Coordinator.

Sincerely,

Jeff McKoy
Deputy Commissioner
Program Services

cc:     Supt./Green Haven C.F.
        Guidance/Green Haven C.F.
        Central Files

*Please Return*

(#44) *Untimely*
*C.O.R.C.*
*Decisions* ON

RECEIVED BY:
AUBURN I.G.R.C.
12/5/18

William Coke
02B1082
D-1-45
11/10/18

**Grievance Complaint:** (Aub- 75438-18)

This complaint is about the lengthy amount of time it is taking to resolve these crucial matters, the unanswers of inquiries made to see if the appeal was recieved.

On 12/18/17 Aub-73321-17 was appealed to CORC on 1/16/18 and to this day after a many inquiries, there has been no response from the grievance office or CORC and as recently, Oct.2018 an application for long-johns have been resubmitted, not only by myself but by many other inmates and there has been no response from the front office, there's no need to show an 8th Amend. violation because it's already been stated.

On 2/8/18 Aub- 73624-18 was also appealed to CORC 3/12/18, again my inquiries went unresponded to and there has beeen no acknowledgment from CORC. This grievance is an ADA issue due to my swollowing problems resulting from the Disk-fusion in my neck, but that's already known and no accomodation has been made or even considered.

On 3/13/18 Aub- 73860-18 was appealed to CORC on 4/10/18, again all inquiries went unresponded to and there was no acknowledgment from CORC.

This complaint is about deliberate failures to process grievant's complaints/ resolve within 30 days time period given to CORC, this complaint also contains violations of grievant's New York and U.S. Constitutional rights(1,8 and 14). See, 42 U.S.Codes §1997-e(a)

*AUB-7543878*

provides that "until such administrative remedies are available have been exhausted" no action may be brought with respect to prison conditions under 1983 by a prisoner pursuant to the prison litigation reform act(PLRA).

Step 1: and two have been resolved, greivant returned his complaint to the IGRC Supevisor to appeal to CORC with written and typed response for consideration. CORC is required to decide the appeal within 30 days. See also Ross v. Blake, 136 S.Ct. 1850(2016) The Court identified three circumstances in which a Court might find that administrative remedies are not available 3) The grievance system operates as a dead-end with Officers unable or "consistantly" unwilling to provide any relief to aggrieved inmates.

### Action Requested:

- I want to be transferred to Sing-Sing Corr. Fac. to participate in the Masters Program, since my transfer is in the Green Haven Hub and my transfer is in, and this was the only way to put in for Sing-Sing, nor would it make sense to send a Max B. prisoner back to a Max.A, that has no disciplinary record.

William Coke

| | Grievance No. | Code | Date Filed: |
|---|---|---|---|
| **Corrections and Community Supervision** | AUB - 75438 - 18 | 44.0 | 12/5/2018 |
| | **Facility** Auburn | | **Due Date:** 12/14/2018 |
| | **Grievant Name** | | **Din Number** |
| **INMATE GRIEVANCE PROGRAM** | Coke        W.        D-01-45 | | 02-B-1082 |
| **Investigation** | **Signature of report Writer** | | **Date** 12/5/18 |

## NAME OF PERSON(S)/TITLE AND/OR DEPARTMENT INVOLVED:

1. _____   2. _____

3. _____   4. _____

## INVESTIGATIVE REPORT
(Please specify name of person(s) whom you have received the various facts from.)

CORC is approximately 14 months behind in responses. As soon as any CORC decision comes in, you will receive a copy.

## RELEVANT DOCS/FACILITY POLICY - CORC/COMMISSIONER DECISION

## ADDITIONAL PERTINENT STATEMENT BY GRIEVANT:

FORM 2132 (REV.2/89)

| NEW YORK STATE **Corrections and Community Supervision** | GRIEVANCE NO: AUB - 75438 - 18 | DATE FILE 12/5/2018 |
| --- | --- | --- |
| | FACILITY **AUBURN** | POLICY DESIGNATION **I** |
| | TITLE OF GRIEVANCE UNTIMELY CORC DECISIONS | CLASS CODE **44.0** |
| **INMATE GRIEVANCE PROGRAM** **SUPERINTENDENT** | SUPERINTENDENT'S SIGNATURE *[signature]* | DATE **1/29/2019** |
| GRIEVANT Coke W. | DIN 02-B-1082 | HOUSING UNIT D-01-45 |

**The Superintendent upholds the findings of the IGRC.  Transfers are done by
Classification  Movement in Albany; not at the facility level.  CORC is backlogged with
overdue appeal decisions.  Appeal is granted to that extent.**

---

### APPEAL STATEMENT

If you wish to refer the above decision of the Superintendent please sign below and return this copy to you Inmate
Grievance Clerk.  You have seven (7) calendar days from receipt of this notice to appeal.*  Please state why you are
appealing this decision to C.O.R.C.

*My health is deteriorating due to the prolonged 10-15
months wait*

_____                    __2/3/19__
GRIEVANT'S SIGNATURE                                          DATE

_____                    _____
GRIEVANCE CLERK'S SIGNATURE                              DATE

*An exception to the time limit may be requested under Directive #4040, Section 701.6 (g).
FORM 2133 (02/15)

| NEW YORK STATE | Corrections and Community Supervision | Grievance Number<br>AUB-75438-18 | | Dasig./Code<br>I/44 | Date Filed<br>12/05/18 |
|---|---|---|---|---|---|
| ANDREW M. CUOMO<br>Governor | ANTHONY J. ANNUCCI<br>Acting Commissioner | Associated Cases | | | Hearing Date<br>04/22/20 |
| | | Facility<br>Auburn Correctional Facility | | | |
| INMATE GRIEVANCE PROGRAM<br>CENTRAL OFFICE REVIEW COMMITTEE | | Title of Grievance<br>Untimely CORC Decisions | | | |

## GRIEVANT'S REQUEST UNANIMOUSLY ACCEPTED IN PART

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby accepted only to the extent that CORC upholds the determination of the Superintendent for the reasons stated.

CORC advises the grievant that every effort is made to review and respond to appeals as quickly as possible and that a Receipt of Appeal is generated and sent to the facility IGRC once a grievance has been scheduled to be heard by CORC.  CORC notes that AUB-73321-17 and  AUB-73624-18 were answered by CORC on 4/24/19 and 6/5/19, respectively.  It is also noted that the grievant's transfer concerns pertaining to participation in Sing Sing CF's Master's Degree Program was the subject of AUB-73860-18 which was answered by CORC on 7/31/19.

With regard to the grievant's appeal, CORC finds no malice by staff and notes that he has since been transferred.  CORC advises him to address medical concerns via sick call.

TAB/

-----------------------------------------------------------------------------------------------------

-----------------------------------------------------------------------------------------------------

This document has been electronically signed by Shelley M. Mallozzi

William Coke-02B1082
P-75
8/21/19

## GRIEVANCE COMPLAINT

This complaint is made for my safety, health concerns and my need to be accomodated.

- I was sent here by DOCCS on or about 5/30/19, to attend the Masters Program and in less than 4 Months the herein has taken place.

- I had to go to sick-call twice just to get Dr. Parker's attention, on the 3rd week I met with him on 6/21/19. He gave me a bus-pass, elevator pass and a flats permit. I also requested a feed-up for my swollowing impairment and Theraputic Medical shower pass for the nerve damage in my entire back, legs and feet due to nerve pain. He claimed that the Dep. of Security would not allow the feed-up and gave no rationale, only to say that She would not allow it and gave me the pass, stating showers per Block(MWF).

- On 7/15/19 I had an 8AM call-out to see Dr. Parker, It was made known that some of my medications were about to expire and refills were needed. Then the medical pass' close expiration was soon at hand(7/31/19). He pulled out a blank pad with medical passes and began to fill one out "I'll have to get permission from the Dep. of Security for your medical showers, you can go now I'll mail them to you".

- On 8/1/19 I had the most useless outside trip ever, the trip started out at 9AM and at 1PM my blood-pressure was taken 190 over 80 and the Cardiologist wanted to increase the Cozaar. "Okay, see you in the next 6 months".

- I was given a call-out by the RN to return the next day, on 8/2/19 at 8:30 I experienced the worst professionalism ever. I did'nt know where I was, his white shirt was drenched with sweat and it was only about 8:15 when he walked in...He was drenched from neck to chest his eyes buldged. "We don't do it this way, you'll have to be rescheduled...Okay what about my passes, I did'nt get them, you made them out on the fif---I do'nt know what you're talking about, I don't have time for this shit" and stormed off as the C.O's looked on.

- After writing the Original grievance that I.G.R.C. and Medical Director never responded to, on the week of the 5th of Aug I tried

two times to go to sick-call 8/5, 8/9 trying to get the medical pass renewed.

-On 8/13/19 went to sick-call with a UTI my 4th or 5th in a year, I met with Dr. Parker and he devised some plan to keep me in the clininc from 8Am to 3PM and I was escorted to Mt. Vernon hospital in short instead of getting the IV treatment a script was written out and I was released.

- On 8/14/19 I had to return to sick-call and  get the medication from him and I was given the same thing as before but this time it was 1000MG's tice a day for 10 days.

- On or about the 8/16/19 I returned to sick-call attempting to get the medical pass, the RN took all of the information and said that she will give it to the Provider, but I never recieved it.

### RELIEF REQUESTED

-By denying me these medical passes, I am not able to get back up this mountain. Everything of interest is located in the School Building. On Aug.19,19 I had an NA meeting and could'nt go. The Law Library, the Library all public services, programs and benefits are located in the school buildings and since Medical services is a Program I'm being discriminated againts, this dis-crimination has nothing to do with Penological interest and is abbitrary and intentional. By denying me this pass you're playing with my health, putting me at risk to further degenoration by intentionally excluding me from these services, programs and benefits I can actively partake like other prisoners and otherwise qualified impaired prisoners partake in.

- Don't get angry at me, I was susposed to be enrolled in the 2019-2020 class, my transfer was approved on 11/20/18. This was found out on 3/15/19.

- I wish that all of the Retaliation would stop, since the firing of Dr. Clark and the demotion and transfer of F. Bernstein the Medical Services Dept. has done everything possible to worsen my health and the herein is a prime example.

- This 63 year old just wants to complete his degree and move on as quick as possible.

William Coke

RECEIVED

6/145-19

SEP 11 2019

SING SING I.G.P.



William Coke
02B1082
A-P-75S
10/9/19

## GRIEVANCE COMPLAINT

## THE GRIEVANCE PROCESS:

On 8/23/19 I went back to Sick-Call for about the 6th time trying to secure the Medical pass, the Nurse opened the chart and there was a yellow copy dated 8/1/19-9/30/19 but the Block Showers were from 8/1/19-9/6/19 on the medical pass. She made me a copy and signed the date of reciept.

I get Corresponce from inter-department, and I sometimes get Mail even from the Pharmacy. But there is no logical excuse or reasoning as to why I would get a medical pass 23 days over-due after making 6 visits to sick-call. I suffer with Spinal nerve damage, disc joint disease, heriated herniated L-5 and Spondylosis in my neck and lower back and a painful disc-fusion descetomy and Theraputic medical showers on a daily basis helps with the pain. I also have swollowing problems in which all of my Neurological and Muscular-Skeletal records vanished at Green Haven, then at Auburn. As we can see Dr. Parker and Dep. Henton are excluding me from the most simpelist of reasonable accomodations and no response or acknowledgment from the Grievance Program adds to the difficult task of resolving these issues.

## ACTION REQUESTED

- If these ADA issues are premature for this office please send them to the approproiate one.

- But if they are, acknowledgment with a grievance Number is needed and should there be any conflict of interest, passed up to the Superintendant.

William Coke



**Corrections and
Community Supervision**

**ANDREW M. CUOMO**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

**MEMORANDUM**

**TO:** COKE, W #02B1082

**FROM:** Q. Quick, IGP Supervisor

**SUBJECT:** Grievance Complaint

**DATE:** 9-12-19

    Your complaint dated: 9-9-19   code# 22   filed as grievance# 61145-19

titled: MEDICAL PASS WAS GIVEN 23 DAYS OVERDUE

is currently under investigation by the Inmate Grievance Program Staff.

At the completion of our investigation you will be informed of any informal resolution

suggestion or you will be scheduled for a hearing.

FORM 2131E (REVERSE) (REV 6/06)
**Response of IGRC:**

**Code: 22**

SS#    61145-19                                          Date: October 8, 2019
Name: Coke, W.        Din# 02B1082

**Disagree**

      Per Dr. Ferdous, FHSD grievant's medical pass was issued late due to an oversight. The current expired passes can be requested for renewal via his health care provider. Grievant is further advised to request the reasonable accommodations he seek, under the A.D.A. (Americans with Disabilities Act), from Deputy Superintendent of Programs L. Malin.

Date Returned to Inmate: **OCT 0 8 2019**          IGRC Members: _____

Chairperson: _____

Return within 7 calendar days and check appropriate boxes.*

[X] I disagree with IGRC and wish to
    Appeal to the Superintendent.

[ ] I have reviewed deadlock response.
    I have reviewed Pass-Thru to Superintendent.
    Each automatically goes to Superintendent.

[ ] I agree with the IGRC response and wish to
    Appeal to the Superintendent.

[ ] I apply to the IGP Supervisor for
    Review of dismissal

Signed: _____          _10/10/19_
    Grievant                              Date

_____                    _____
Grievance Clerk's Receipt          Date

---

*To be completed by Grievance Clerk.*

Grievance Appealed to the Superintendent:        _____
                                                      Date

Grievance forwarded to the Superintendent for action:   _____
                                                      Date

*An exception to the time may be requested under Directive #4040 § 701.6(g).

 **Corrections and Community Supervision**

**ANDREW M. CUOMO**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

TO:        William Coke        02B1082        A-P-75

FROM:    L. Malin, Deputy Superintendent for Programs

RE:        Response to your letter

DATE:      October 25, 2019

I am writing in response to your letter which I received on October 25, 2019 regarding a shower pass, bus pass, elevator pass, boots pass, and feed ups.

The items you are asking for are not considered reasonable accommodations.  As per directive 2614, section II B, requests for medical treatment, permits or anything required for activities of daily living are not considered reasonable accommodations and may not be requested through the reasonable accommodation process.  Requests for such items must be made through the facility Medical department.

CC:    Dr. Ferdous
       DSP File
       Guidance File

William Coke- 02B1082
A-P-75S
10/3/19

Dr. Ferdous,

I am writing you in need of intervention because of your title as MEDICAL DIRECTOR. But first I'd likke to thank you for reffering me to an eye appointment to get my glasses replaced, however I need them yesterday. Without my medicated eyeware, I'm bout as one stumbeling in the dark. That Officer had no right or cause to steal tamper with or create hardships for me. So if you can provide any assistance for me to see the eye doctor sooner, it will be greatly appreciated.

Question, is it my fault that proper and adequate medical care is not given to me as it is given to others? Where I have to take risks in protecting and preserving my health to avoid any further injury? In the above who's wrong?

In the first instance of conflict I wrote you and the grievance Supervisor and neither of you responded, since I written 3, I even tried to get Superintendant Capra to intervien and still nothing to my knowledge has been done and now I'm resubmitting this letter to you. This is much bigger then Mr. Parker or the Dep. of Health Services, this is a repetition experienced at 2 other prisons. I have documented Swollowing problems and Vertebral problems in need of reasonable accomodation. This prison sets on a mountain unlike other prisons experienced, going down the hill is no problem but even coming up the hall-way from the van pain is noted even with the recent pain shot in the lower back. As of the above date I have no medical pass for the bus, elevator, or daily medical showers.

The ego of Mr. Parker is extremely large. My anxiety, pain and medical needs won't allow the required tolerance needed, so we clash and rather than looking at the medical file and examine me, he uses conversation to justify intentional denials. Are these medical diagnoses in my medical file? Where Swollowing and Vertebral exams and thraphy were last examined 5/15/17? So why am I not being accomodated as other prisoners are? Why am I being denied reasonable accomodations to protect and preserve my health? Why am I forced to white-out a medical pass to protect and preserve my health? Whose fault is this? What's got to happen to resolve this? This also hinders other medical problems from being attended to. Any intervention is greatly appreciated, with your response of acknowledgment.

Lastly, I want you to know that I was sent here to Sing Sing to enroll into the Masters Program, which I'm to start the 2020-2021 Fall Semester because these injuries have resulted in a loss of skills aquired and stripped me of my long-time celebrated independance and what Medical professionals fail to understand is the devasting affects this trauma has on a person, especially a disabled vet suffering with depression. The insensitivity is obviously noted by established medical records and failure to address them, no physical exam that would warrent MRI's or x-rays. The diagnoses warrents entitlement!

> Sorry to be so long-winded, but
> my medical needs are being denied
> and a different doctor will perhaps
> be more affective.
>
> Thank you,
>
> William Coke

P.S. Tried Sick-Call only to
end up with repeated unacknowledged
requests.

CC. File

William Coke-02B1082
A-P-75S
6/30/20

**To:** Med. Director Dr. Ferdous
    And Dr. F. Parker

**Re:** Medical concerns:

Doctors,

  I am compelled to wite to the both of you because of my health concerns that I wish to make known. I would have done so on the above date, but my sick-call slip was not accepted.
- My Medical permits will expire 7/3V20 and
- I need to get an Rx for Ferrous Sulfate(iron pills).

  My other issues are humble requests for your consideration of the following two issues.
- For my own sanity and safety sake, I've had this swollowing problem since 2015, which was the last "Barium Swollow Study", I pray that an update follow-up be given. And
- I am in need for the 2nd Epidermal/pain shot along with other medical plans that were made for me before this crippeling Covid-19 closed the State.

  1 know that these request will not happen overnight, but perhaps when things get more relaxed this can be possible. Currently, I still have to buy my own food and prepare it so that I can safely consume it without choking, even if it's at the sake of my blood pressure and swollen feet.

  It's my prayers to get these issues in check, while they still function, nor do I want to expose myself. Medical facts say hide in place and that's what I've been doing, with hopes that the both of you are keeping safe as well, thank you for your consideration.

William Coke



Dr. E. L. Hunt, NYTS Program Director
**New York Theological Seminary Program**
Sing Sing Correctional Facility
Ossining, New York 10562-5442

MASTER OF PROFESSIONAL STUDIES

July 11, 2019

Mr. William Coke #02B1082

Green Haven Correctional Facility

P.O. Box 4000

Stormville, NY 12582

Dear Mr. Coke,

Your application for admission into the New York Theological Seminary (NYTS) Master in Professional Studies degree program has been received and will be processed for the 2020-2021 academic year.

Thank you for your interest in NYTS.

Sincerely,

Dr. E.L. Hunt,
NYTS Program Director

William Coke
02B1082
A-P-75

Nov, 1, 19

TO: FOIL OFFICER,
    Please Note:
        On the 2nd Meeting with Mrs, Little,
She Searched my Inmate file with a
diligent effort to Locate File# 20180220-082649-(AL
Created on or about 4/25/18 at Auburn C.F.
        However, there are no files (files) of any
Kind, Located in my file Concerning any Established
Correspondences of Such for Auburn C.F. In Short
all correspondences from Auburn C.F. are not
in my file, I need Copies of the Above Mentioned
file number from Mrs. McGrath and to Mrs McGrath
Associate Commissioner
        Mrs. Little advised me that I should
resubmit my request so that these documents
be included in my rescheduled review so that
need for these missing records can be placed in my
file Where they belong, and Your assistance is
                                              Sincerely,

William Coke - 02B1082
A-P-75S
11/18/19

### GRIEVANCE COMPLAINT

Upon making about four differnt requests to the FOIL OFFICER,
I made the specific request to review and inspect document
number 20180220-082649-LAL. This correspondebce transpired be-
tween Mrs. McGrath and myself in which She makes note that the
Superintendent of Auburn C.F. and Inmate records were distributed
copies.

But when visiting Mrs. Little around the early part of October
2019, We discovered that there were <u>no</u> disclosure of any
correspondence from Auburn c.f. but two pieces of papaer from it.
And upon returning to P-75 I made certain to bring this matter
to the attention ofthe FOIL OFFICER. The FOIL program is a State
and Federal statute garantee access upon making the specific and
required requests which a time restraint creates default and this
Officer has breach their duty of disclosure. Ther's been no kind
of response upon making the FIFTH request. It is my legal right to
inspect and review this document.

### ACTION REQUESTED

- I want immediate access to this document.
- I don't want this complaint process interferred with like the first
one that was appealed to the Superintenent's office with no type
of response, three months so far. And
- I want to review the rest of my file for clemency purposes w/o
interference.

?William ?Coke

**State of New York**
**Department of Corrections**
**& Community Supervision**
**Sing Sing Correctional Facility**
354 Hunter Street
Ossining, New York 10562-5442
914-941-0108

**Anthony J. Annucci**
**ACTING COMMISSIONER**

**Michael Capra**
**SUPERINTENDENT**

# MEMORANDUM

December 3, 2019

To:     Coke,W        #02B1082        HBA-P-75

From:  Q. Quick, I.G.P. Supervisor

Subj:  **FOIL REQUEST**

Be advised,

A FOIL request is "non-grievable." *See* Directive #4040 - § 701.3(e)(2). If you do not receive an answer to your FOIL request, you may contact Department Counsel at Central Office: 1220 Washington Avenue, The Harriman State Campus, Albany, N.Y. 12226-2050. Also, you may obtain Policy & Procedure #350 and/or Directive #2010, which governs the FOIL process, through the facility's law library. I trust that this information has been helpful to you.

CC: File.

Smokers Outlet Inc.
4585 W. Market St.
York, PA 17408

2   CP83-R Gambler Pipe Tobacco   6 OZ  9.98
7   #158   Bugler Rolling Papers

<u>27.00</u>

25.55
1.35
26.85



**NEW YORK STATE** | **Corrections and Community Supervision**

**ANDREW M. CUOMO**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

December 16, 2019

Mr. William J. Coke
02B1082
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 12563

Dear Mr. Coke:

This is in response to your recent letter regarding the New York Theological Seminary's Master of Professional Studies at Sing Sing Correctional Facility (CF).

A member of my staff has investigated your request. Please be advised that you do not meet the eligibility criteria for this program. The New York Theological Seminary's Master of Professional Studies program as approved by the New York State Education Department prohibits inmates convicted of sex offenses from participation. Although you may apply for the program, your application will not be approved due to the nature of your crime.

Please be advised, if you have any additional questions regarding your education, please address them directly with Ms. Marchese, Education Supervisor, at Sing Sing CF.

Sincerely,

Jeff McKoy
Deputy Commissioner Program Services

cc:     Superintendent, Sing Sing C.F.
        Education Supervisor, Sing Sing C.F.
        Central Files



STATE OF NEW YORK

**DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION**

THE HARRIMAN STATE CAMPUS – BUILDING 2

1220 WASHINGTON AVENUE

ALBANY, N.Y. 12226-2050

**ANTHONY J. ANNUCCI**
ACTING COMMISSIONER

**JEFF MCKOY**
DEPUTY COMMISSIONER
PROGRAM SERVICES

January 23, 2015

Mr. William J. Coke
02B1082
Green Haven Correctional Facility
594 Route 216
Stormville, New York 12582

Dear Mr. Coke:

This is in response to your recent letter regarding the New York Theological Seminary's Masters of Professional Studies at Sing Sing Correctional Facility.

A member of my staff has investigated your request. Please be advised that you do not meet the eligibility criteria for this program. The New York Theological Seminary's Masters of Professional Studies program as approved by the New York State Education Department prohibits inmates convicted of sex offenses from participation. Although you may apply for the program, your application will not be approved due to the nature of your crime.

Please be advised, if you have any additional questions regarding your education, please address them directly with Mr. Heintz, Acting Education Supervisor at Green Haven Correctional Facility.

Sincerely,

Jeff McKoy
Deputy Commissioner
Program Services

cc:    Supt./Green Haven C.F.
       Acting Ed. Supv./Green Haven C.F.
       Central Files

**State of New York**
**Department of Corrections**
**& Community Supervision**
**Sing Sing Correctional Facility**
354 Hunter Street
Ossining, New York 10562-5442
914-941-0108

Anthony J. Annucci
ACTING COMMISSIONER

Michael Capra
SUPERINTENDENT

# MEMORANDUM

February 5, 2020

To:    W. Coke        #02B1082      Location HBA-P-75

From:  Q. Quick, I.G.P. Supervisor

Subj:  **Status of Claim**

Be advised,

In regards to the 1/28/20 letter written to the Superintendent regarding 61145-19. Records indicate there was an IGRC hearing held 10/8/19, however your appeal was never received to be processed. In regards to claim# 010-0058-19, I've been advised said claim was a recommended disapproval.

CC: File.

```
2/05/20 15:31:47      NYS DEPARTMENT OF CORRECTIONAL SERVICES      PAGE      1
HSC4781                      HEALTH SERVICES SYSTEM
                        REQUEST AND REPORT OF CONSULTATION
```

NAME: COKE, WILLIAM J                    DIN: 02B1082    DOB: 06/13/1956
                                         CURRENT FAC: SING SING GN
REFERRING FAC  : SING SING GN            REFERRAL NUMBER: 20018293.01M
REFERRAL DATE  : 01/14/20 12:34P  TELEMED: N<N>  REFERRAL TYPE  : INITIAL
TYPE OF SERVICE: PHYSICAL THERAPY        REFERRAL STATUS: SCHEDULED
URGENCY OF CARE: ROUTINE                 INTERPRETER:

MEDICAL HOLD: YES    TYPE: 2   REASON CODE: 01 EXP.DATE: 2020-03-30
TRANSPORTATION : N   WHEELCHAIR N  NURSE N  AMBULANCE N  LITTER N  HCA
SENSORIAL IMPAIRMENT:
REFERRED BY: FREDERICK L PARKER, MD       APPOINTMENT: 02/06/20   12:00P
REVIEWED BY: RAZIA FERDOUS, MD            POS: SING SING CF
                                          PROV: D'ALESSIO, COLLEEN

REASON FOR CONSULTATION:
( S/P CERVICAL FUSION AT C4-C5/C5-C6 AND PAIN IN SHOULDER GIRDLE W/ DECREASED  )
( ROM. REQUEST PTH FOR INCREASED ROM IN NECK AND UPPER BACK.                   )
(                                                                              )
(                                                                              )

ATTENTION: DO NOT INFORM INMATE OF FUTURE APPOINTMENT(S)

CONSULTANT REPORT:

S: Pt is a 62 y/o doc c̄ pain B shoulder pain noted p̄ C4/C5/C6 fusion in 2014. pmh- HTN, NIDDM per pt meds- Home meds per pt. Pt also states he has a h/o LBP c̄ L5, involvement of ? HNP c̄ L/5 spine, per pt.

O: Amb - Ī c̄ AD
Pain - c spine 5-6/10 currently
B Shoulder 3/10 "ache" not painful

↑7-8/10 supine cspine
↓3/10 c̄ meds
↑7/10 am/sidelying
↓1/10 c̄ med/mh

HEP - 3-5 X/wk pt stretches
ROM ↓>ext ✓ ... (6"mid chin) ... rot↓
Rot > lat ✓ c spine

lifting
posture - kyphotic posture
- trunk lean SL
- illiac crest
- PSIS

ROM 8-165 B  4/5 B
Shoulder UNI ext B  4/5 B
IR/ER mod B  4/5 B

P: 1 Given pain c̄ swallowing & ↑ time to eat 2° to ↑ time mastication to enable tolerable swallowing, given w/o esophageal tear, per pt, alongside his cspine fusion →PT advised pt to f/u c̄ md/sick call to discuss if he could have ↑time to eat @ mess hall. Presently pt states he is unable to complete

CONSULTANT SIGNATURE: _____  DATE: 2.6.20
IF FOLLOW-UP/PROCEDURE RECOMMENDED - REQUESTED BY __ / __ / __

* CONSULTATION IS A RECOMMENDATION.  FINAL DETERMINATION WILL BE MADE BY THE
  INMATE'S NYSDOCS PHYSICIAN.

eating c̄ given time, @ present, 2° to his issue noted above.

2 Per pt - awaiting MRI of Cspine, Pt does NOT want PT til study is complete. See attached for functionally, pt ?may be @ baseline ROM cspine/UE B, given his reports above. Pt has ↓ ROM isolated of cspine/UE. This impacts lifting c̄ UE.

```
12/18/19 10:46:45     NYS DEPARTMENT OF CORRECTIONAL SERVICES     PAGE     1
HSC4781                       HEALTH SERVICES SYSTEM
                         REQUEST AND REPORT OF CONSULTATION

NAME: COKE, WILLIAM J                      DIN: 02B1082   DOB: 06/13/1956
                                             CURRENT FAC: SING SING GN
REFERRING FAC  : SING SING GN              REFERRAL NUMBER: 19266075.01M
REFERRAL DATE  : 06/28/19 02:55P  TELEMED: N<N>  REFERRAL TYPE  : INITIAL
TYPE OF SERVICE: PRESCRIPTION FOOTWEAR     REFERRAL STATUS: SCHEDULED
URGENCY OF CARE: ROUTINE                   INTERPRETER:

MEDICAL HOLD: YES   TYPE:  2 | REASON CODE:  01 EXP.DATE:  2020-01-30
TRANSPORTATION : N   WHEELCHAIR  N    NURSE  N    AMBULANCE  N    LITTER  N   HCA
SENSORIAL IMPAIRMENT:
REFERRED BY: FREDERICK L PARKER, MD        APPOINTMENT: 12/20/19   09:00A
REVIEWED BY: RAZIA FERDOUS, MD             POS: PROSTHETIC REHAB
                                           PROV: PROSTHETIC REHABILITATION

REASON FOR CONSULTATION:                       USER: 06/28/19 02:55P C070FLP
 ( W/ PROSTHETIC BOOTS ISSUED 4/2017, NOW FALLING APART. REQUEST FITTING FOR )
 ( NEW BOOTS.  HX B/L HALLUX VALGUS 24 DEGREES AMD CALCANEAL ENTHESOPATHY.   )
 (                                                                           )
 (                                                                           )
 (                                                                           )
========================================================================
            ATTENTION: DO NOT INFORM INMATE OF FUTURE APPOINTMENT(S)

CONSULTANT REPORT

S:



O:



A:
```



```
P:



CONSULTANT SIGNATURE: _____  DATE: 12/20/19
IF FOLLOW-UP/PROCEDURE RECOMMENDED - REQUESTED BY __ / __ / __

* CONSULTATION IS A RECOMMENDATION.  FINAL DETERMINATION WILL BE MADE BY THE
  INMATE'S NYSDOCS PHYSICIAN.
========================================================================
```

```
  9/10/19 12:53:58      NYS DEPARTMENT OF CORRECTIONAL SERVICES      PAGE     1
HSC4781                     HEALTH SERVICES SYSTEM
                       REQUEST AND REPORT OF CONSULTATION
```

NAME: COKE, WILLIAM J                        DIN: 02B1082   DOB: 06/13/1956
                                                   CURRENT FAC: SING SING GN
REFERRING FAC  : SING SING GN              REFERRAL NUMBER: 19255893.02M
REFERRAL DATE  : 09/04/19 11:18A  TELEMED: N<N> REFERRAL TYPE  : PROCEDURE
TYPE OF SERVICE: PAIN THERAPY              REFERRAL STATUS: SCHEDULED
URGENCY OF CARE: SOON                      INTERPRETER:

MEDICAL HOLD: YES   TYPE:  2  | REASON CODE:  01 EXP.DATE:  2019-10-31
TRANSPORTATION : N   WHEELCHAIR  N   NURSE  N   AMBULANCE  N   LITTER  N   HCA
SENSORIAL IMPAIRMENT:
REFERRED BY: FREDERICK L PARKER, MD        APPOINTMENT: 09/12/19   09:00A
REVIEWED BY: RAZIA FERDOUS, MD                POS: FISHKILL RMU
                                           PROV: GEVIRTZ, CLIFFORD - ANES

REASON FOR CONSULTATION:                        USER: 09/04/19 11:18A C070FLP
 ( PT W/ CHRONIC LBP WITH RADICULAR PAIN BOTH LE'S TO FEET, FAILED TRAIL OF PT )
 ( . REQUEST LUMBAR ESI. (NOTE: DATE IS PER CONSULTANT REQUEST)               )
 (                                                                            )
 (                                                                            )
 (                                                                            )
================================================================================
          ATTENTION: DO NOT INFORM INMATE OF FUTURE APPOINTMENT(S)

CONSULTANT REPORT:

S: No ⊥ in s/s. No red Flags. Informed Consent Re-enfored. All
   questions answered. Wishes to proceed.
      LLD position. Ultrasound survey. L₅-S₁ interspace ID'd.

O: Epidural space ID'd. ⊖ Aspiration in 4 Quads. ⊖ CSF, blows, paresthesia.
   Test Dose. VSS. No rxn.
   Dexamethasone 10MG in 5cc NS.
   Needle cleared c̄ 2cc NS.

A: Patient tolerated procedure well.
   No complications.
   RTC 8 weeks for ESI #2

P:



CONSULTANT SIGNATURE: _____CS_____     DATE: 9/12/19
IF FOLLOW-UP/PROCEDURE RECOMMENDED - REQUESTED BY __1/7/19__

* CONSULTATION IS A RECOMMENDATION.  FINAL DETERMINATION WILL BE MADE BY THE
  INMATE'S NYSDOCS PHYSICIAN.
================================================================================

                              TP  9/16/19

```
11/07/19  6:07:10      NYS DEPARTMENT OF CORRECTIONAL SERVICES      PAGE      1
HSC4781                      HEALTH SERVICES SYSTEM
                        REQUEST AND REPORT OF CONSULTATION

NAME: COKE, WILLIAM J                    DIN: 02B1082   DOB: 06/13/1956
                                           CURRENT FAC: SING SING GN
REFERRING FAC  : SING SING GN            REFERRAL NUMBER: 19255893.03M
REFERRAL DATE  : 09/16/19 11:36A  TELEMED: N<N> REFERRAL TYPE  : PROCEDURE
TYPE OF SERVICE: PAIN THERAPY            REFERRAL STATUS: SCHEDULED
URGENCY OF CARE: ASSIGNED                INTERPRETER:

MEDICAL HOLD: YES   TYPE:  2  REASON CODE:  01 EXP.DATE:  2019-11-30
TRANSPORTATION : N   WHEELCHAIR  N   NURSE  N   AMBULANCE  N   LITTER  N   HCA
SENSORIAL IMPAIRMENT:
REFERRED BY: FREDERICK L. PARKER, MD         APPOINTMENT: 11/07/19   09:00A
REVIEWED BY: RAZIA FERDOUS, MD                   POS: FISHKILL RMU
                                            PROV: GEVIRTZ, CLIFFORD - ANES

REASON FOR CONSULTATION:                      USER: 09/16/19 11:36A C070FLP
( HX CHRONIC LBP WITH B/L RADICULOPATHY. REQUEST ESI #2.                  )
(                                                                         )
(                                                                         )
(                                                                         )
(                                                                         )
========================================================================
           ATTENTION: DO NOT INFORM INMATE OF FUTURE APPOINTMENT(S)
```

CONSULTANT REPORT:

S: He has greater than 50% pain relief from his back.
But now complains of his neck pain which is s/p cervical fusion.
Decreased grip strength bilaterally.   No Red Flags.

O: Sensory is intact.
DTRs symmetric 2+

A: ⊖ Hoffman Reflex.

Suggest:
P:
① Hot Showers help his pain
② Consult PM&R.
③ Cervical MRI.

④ Depending on the results of MRI, consider cervical ESI.

```
CONSULTANT SIGNATURE: _____CGf_____    DATE: 11, 7, 19
IF FOLLOW-UP/PROCEDURE RECOMMENDED - REQUESTED BY 12 / 19 / 19

* CONSULTATION IS A RECOMMENDATION.  FINAL DETERMINATION WILL BE MADE BY THE
  INMATE'S NYSDOCS PHYSICIAN.
========================================================================
```

RF 11/14/19

```
12/13/19 12:19:01        NYS DEPARTMENT OF CORRECTIONAL SERVICES        PAGE    1
HSC4781                        HEALTH SERVICES SYSTEM
                          REQUEST AND REPORT OF CONSULTATION
```

NAME: COKE, WILLIAM J                          DIN: 02B1082   DOB: 06/13/1956
                                               CURRENT FAC: SING SING GN
REFERRING FAC  : SING SING GN                  REFERRAL NUMBER: 19477690.01M
REFERRAL DATE  : 11/26/19 09:57A  TELEMED: N<N> REFERRAL TYPE   : INITIAL
TYPE OF SERVICE: CAT SCAN - BACK               REFERRAL STATUS: SCHEDULED
URGENCY OF CARE: ROUTINE                       INTERPRETER:

MEDICAL HOLD: YES   TYPE: 2   REASON CODE: 01 EXP.DATE:  2020-01-30
TRANSPORTATION : N   WHEELCHAIR  N   NURSE  N   AMBULANCE  N   LITTER  N   HCA
SENSORIAL IMPAIRMENT:
REFERRED BY: FREDERICK L PARKER, MD            APPOINTMENT: 12/16/19   10:30A
REVIEWED BY: RAZIA FERDOUS, MD                 POS: MOUNT VERNON HOSPITAL
                                               PROV: DEPT OF RADIOLOGY/DIAG IM

REASON FOR CONSULTATION:                       USER: 12/04/19 09:18A C070FLP
( I/M S/P CERVICAL FUSION, NOW W/ CERVICAL, SHOULDER GIRDLE/ UE PAIN AND WEAK )
( NESS IN B/L HANDGRASP/ UE FLEXION. REQUEST CT OF CERVICAL SPINE W/WO CONTRA )
( ST. I/M ALSO HAS CHRONIC COMPLAINT OF DIFFICULTY/DELAY SWALLOWING SINCE HIS )
(  SURGERY 11/25/15. METALLIC IMPLANTS WILL DISTORT MRI MORE THAN CT.        )
(                                                                            )
==============================================================================
        ATTENTION: DO NOT INFORM INMATE OF FUTURE APPOINTMENT(S)

CONSULTANT REPORT:    CT Exam: C/Spine + C

S:                    Tech: MJ

                      Status: 12/14/19


O:




A:




P:




CONSULTANT SIGNATURE: _____   DATE: __/__/__
IF FOLLOW-UP/PROCEDURE RECOMMENDED - REQUESTED BY __ / __ / __

* CONSULTATION IS A RECOMMENDATION.  FINAL DETERMINATION WILL BE MADE BY THE
  INMATE'S NYSDOCS PHYSICIAN.
==============================================================================

William Cole
0231082
D-1-45

#22 Dissatisfied With
Facility Treatment
Grievence

AuB-76015-19
RECEIVED BY:
AUBURN I.G.R.C.
ON 4/16/19

4/9

4/8/19

Presented before reader is a potential
problem waiting to occur, and I'm trying to prevent it.
What Should I do?

Security v. Prisoner's health problems

- Grievent has medical Boots that ring when
going through the towers.

- The state boots Cause pain and irritation
in toes

- Getting this problem Solved is a very slow
process.  What Should I do?

- Grievent takes various kinds of Meds, which
includes nerve pain meds that Cause sleepiness
and Many times a delay to respond to "Sitting or
Standing Count".

- Grievent has a prostate problem that Causes him
to get up 8-10X's in a night

- All of this and other things are Known by Medical
and grievant's well being and Care Concerns abandoned

(AUB-26015-19)

- These security enforcements create a potential
- hardship for grievant due to his health problems
everyone is aware of and this enforcement is
nothing more but another obstacle to interfer with
grievent's approved transfer to a prison more
suitable to his health needs.

Action Requested

I don't want to be asked to sign-off on this
Complaint I want this placed in a file with
a Complaint Number.

I want to be able to go to bed around
8-9 pm and sleep thru

I want better health care treatment
that's documented with the truth about
the seriousness of my condition one

I want to be moved out of harm's way

William Cole

Sme 2

# SING SING CORRECTIONAL FACILITY

## INMATE MISBEHAVIOR REPORT ♦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| 1. NAME OF INMATE (Last, First) ♦ NOMERE DEL RECLUSO (Apellido, Nombre) | NO. ♦ NUM | HOUSING LOCATION ♦ CELDA |
|---|---|---|
| Coke, W | 02B1082 | HBA-P-56 |

| 2 LOCATION OF INCIDENT ♦ LUGAR DEL INCIDENTE | INCIDENT DATE ♦ FECHA | INCIDENT TIME ♦ HORA |
|---|---|---|
| HBA-P-56 | July 11, 2020 | 6:00am   Approximately |

| 3 RULE VIOLATION(S) ♦ VIOLACIONES | | | |
|---|---|---|---|
| 106.10 | REFUSING DIRECT ORDER | 112.22 | VISIBILITY OBSTRUCTION |
| 107.10 | INTERFERENCE WITH EMPLOYEE | | |
| 112.21 | COUNT PROCEDURE VIOLATION | | |

**4 DESCRIPTION OF INCIDENT ♦ DESCRIPCION DEL INCIDENTE**

On the above date and approximate time while conducting the 6:00am standing count Inmate Coke, W 02B1082 (P-56) was laying down in his bed and had a bed sheet tied to his cell bars obstructing my view into his cell. I gave him a few direct orders to remove the sheets from his cell bars and to stand for the 6:00am standing count, to which he did not comply. My area supervisor Sgt. D. Montgomery and DSA Helms who were observing me conduct the count were both notified.

| REPORT DATE ♦ FECHA | REPORTED BY ♦ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ♦ FIRMA | TITLE ♦ TITULO |
|---|---|---|---|
| 07/11/20 | Z. Johnson | | C.O. |

| 5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any)    SIGNATURES : | |
|---|---|
| ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay)    FIRMAS:   1 | |
| 2 | 3 |

**NOTE: Fold back Page 2 on dotted line before completing below.**

DATE AND TIME SERVED UPON INMATE _____    NAME AND TITLE OF SERVER _____

FECHA HORA DADO AL RECLUSO _____    NOMBRE Y TITULO DEL QUE ENTREGA _____

You are hereby advised that no statement made by you in response to the charges or information derived therefrom may be used against you in a criminal proceeding. ♦ Por este medio se le informa que no se puede usar ninguna declaracion hecha por usted como respuesta al crgoo informacion derivada de ella en una demanda criminal.

## NOTICE ♦ AVISO

**REVIEWING OFFICER (DETACH BELOW FOR VIOLATION HEARING ONLY)**

You are hereby notified that the above report is a formal charge and will be considered and determined at a hearing to be held. ♦ Por este medio se le notifica que el informe anterior es un cargo formal el cual se considerara y determinara en una audiencia a celebrarse.

The inmate shall be permitted to call witnesses provided that so doing does not jeopardized institutional safety or correctional goals. ♦ Se le permitira al recluso llamar testigos con tal de que al hacerlo no pondra en peligro la seguridad de la institucion o los objetivos del Departamento.

If restricted pending a hearing for this misbehavior report, you may write to the Deputy Superintendent for Security or his/her designee prior to the hearing to make a statement on the need for continued prehearing confinement. ♦ Si esta restringido pendiente a una audiencia por este informe de mal comportamiento, puede escribirle al Diputado del Superintendente para Seguridad o su representante antes de la audiencia para que haga una declaracion acerca de la necesidad de continuar bajo confinamiento , previo a la audiencia.

Distribution:  WHITE - Disciplinary Office  CANARY - Inmate (After review) ♦ Distribucion:  BLANCA - Oficinia Disciplina  AMARILLA - Recluso (despues de la resion)

FORM 2171B (10/14)
Side 2

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

**SING SING CORRECTIONAL FACILITY**

## INMATE MISBEHAVIOR REPORT ♦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| 1. NAME OF INMATE (Last, First) ♦ NOMBRE DEL RECLUSO (Apellido, Nombre) | | NO. ♦ NUM | HOUSING LOCATION ♦ CELDA |
|---|---|---|---|
| Coke, W | | 02B1082 | HBA P-56 |
| 2 LOCATION OF INCIDENT ♦ LUGAR DEL INCIDENTE | | INCIDENT DATE ♦ FECHA | INCIDENT TIME ♦ HORA |
| Housing Block A - P GALLERY P-56 CELL | | July 11, 2020 | 06:00AM Approximately |

| 3 RULE VIOLATION(S) ♦ VIOLACIONES | | | |
|---|---|---|---|
| 106.10 Direct Order | 112.21 | COUNT PROCEDURE VIOLATION | |
| 107.10 Interference | 112.22 | VISIBILITY OBSTRUCTION | |

4 DESCRIPTION OF INCIDENT ♦ DESCRIPCION DEL INCIDENTE

On the above date and approximate time while conducting the 6:00am standing count Inmate Coke, W (02B1082 HBA-P-56) was laying down in his bed and had bed sheets tied to his cell bars obstructing my view into his cell. I gave inmate Woods a few direct orders to remove the sheets from his cell bars and to stand for the 6:00am standing count to which he did not comply. My area supervisor Sgt. D. Montgomery and DSA Helms who were observing me conduct the count were both notified and I have no further information to report at this time.

Served by CO ncoptsias
7/13/20 252pm

| REPORT DATE ♦ FECHA | REPORTED BY ♦ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ♦ FIRMA | TITLE ♦ TITULO |
|---|---|---|---|
| 07/11/20 | Z. JOHNSON | | C.O |

| 5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any) | SIGNATURES : | |
|---|---|---|
| ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay) | FIRMAS: 1 | |
| 2 | | 3 |

**NOTE: Fold back Page 2 on dotted line before completing below.**

DATE AND TIME SERVED UPON INMATE _____ NAME AND TITLE OF SERVER _____

FECHA HORA DADO AL RECLUSO _____ NOMBRE Y TITULO DEL QUE ENTREGA _____

You are hereby advised that no statement made by you in response to the charges or information derived therefrom may be used against you in a criminal proceeding. ♦ Por este medio se le informa que no se puede usar ninguna declaracion hecha por usted como respuesta al crgoo informacion derivada de ella en una demanda criminal.

### NOTICE ♦ AVISO

REVIEWING OFFICER (DETACH BELOW FOR VIOLATION HEARING ONLY)

You are hereby notified that the above report is a formal charge and will be considered and determined at a hearing to be held. ♦ Por este medio se le notifica que el informe anterior es un cargo formal el cual se considerara y determinara en una audiencia a celebrarse.

The inmate shall be permitted to call witnesses provided that so doing does not jeopardized institutional safety or correctional goals. ♦ Se le permitira al recluso llamar testigos con tal de que al hacerlo no pondra en peligro la seguridad de la institucion o los objetivos del Departamento.

If restricted pending a hearing for this misbehavior report, you may write to the Deputy Superintendent for Security or his/her designee prior to the hearing to make a statement on the need for continued prehearing confinement. ♦ Si esta restringido pendiente a una audiencia por este informe de mal comportamiento, puede escribirle al Diputado del Superintendente para Seguridad o su respresentante antes de la audiencia para que haga una declaracion acerca de la necesidad de continuar bajo confinamiento , previo a la audiencia.

Distribution: WHITE - Disciplinary Office CANARY - Inmate (After review) ♦ Distribucion: BLANCA - Oficinia Disciplinaria AMARILLA - Recluso (despues de la resion)

```
07/15/2020              NYS DEPT OF CORRECTIONS & COMMUNITY SUPERVISION         PAGE    1
DCP004                     DISCIPLINARY  HEARING DISPOSITION RENDERED

                 SING SING GN                                    TAPE NUMBER  3

DIN: 02B1082 NAME: COKE, WILLIAM J                          LOCATION: 0A-PN-56S

INCIDENT DATE & TIME:        07/11/2020    06:00 AM    TIER 2

REVIEW DATE:                 07/12/2020           BY: LT   COUGHLIN, S A

DELIVERY DATE & TIME:        07/15/20    04:03 PM  BY: CO   BRIGGSHALL, A J

HEARING START DATE & TIME:  7/15/20 9:50       BY:  LT  S Cuun

HEARING END DATE & TIME:    7/15/20 4:00       BY:  LT  Cusmr
```

```
CHARGE
NUMBER       DESCRIPTION OF CHARGES              REPORTED BY          DISPOSITION

107.10    INTERFERENCE WITH EMPLOYEE      CO   JOHNSON, Z K        Not Guilty
------    ------------------------------  ----  --------------------
106.10    REFUSING DIRECT ORDER                                     Not Guilty
------    ------------------------------
112.21    COUNT PROCEDURE VIOLATION                                 Not Guilty
------    ------------------------------
112.22    VISIBILITY OBSTRUCTION                                    Not Guilty
------    ------------------------------
```

ANY GUILTY DISPOSITION WILL RESULT IN A MANDATORY DISCIPLINARY SURCHARGE IN THE
AMOUNT OF FIVE($5.00) DOLLARS BEING ASSESSED AUTOMATICALLY AGAINST THE INMATE.
SANCTION DATES BELOW ARE SUBJECT TO REVIEW/CHANGE, AND WILL BE CONSECUTIVELY ADDED TO
ANY SIMILAR CURRENT SANCTION. IN ADDITION, WHENEVER A CONFINEMENT PENALTY IS BEING
SERVED AND A MORE RESTRICTIVE CONFINEMENT PENALTY IS IMPOSED AS A RESULT OF ANOTHER
HEARING, THE MORE RESTRICTIVE PENALTY SHALL BEGIN TO BE SERVED IMMEDIATELY, AND ANY
TIME OWED ON THE LESS RESTRICTIVE PENALTY SHALL BE SERVED AFTER COMPLETION OF THE
MORE RESTRICTIVE PENALTY PERIOD.

```
PENALTY                   PENALTY  START  RELEASE SUSPEND   DEFERRED RESTITUTION
 CODE   DESCRIPTION       MO DAYS  DATE    DATE   MO DAYS   MO DAYS  $$$$ . ¢¢
```

DIN: 02B1082 NAME: COKE, WILLIAM J                    HEARING DATE: 7/17/20

A. STATEMENT OF EVIDENCE RELIED UPON:
------------------------------------

Inmate Coke 02B1082 is on Medication
that makes him sleep. Inmate Coke 02B1082
has had (1) misbehavior report in his 18 years.
in prison

B. REASONS FOR DISPOSITION:
---------------------------

See Above

C. SPECIAL INSTRUCTION ON CORRESPONDENCE RESTRICTIONS AND REFERRALS

```
07/15/2020            NYS DEPT OF CORRECTIONS & COMMUNITY SUPERVISION        PAGE    3
DCP004                   DISCIPLINARY  HEARING DISPOSITION RENDERED
```

DIN: 02B1082 NAME: COKE, WILLIAM J                          HEARING DATE: 7/17/20

### SUPERINTENDENT HEARING DISPOSITION RENDERED

| CHARGE | DESCRIPTION OF CHARGES | 5 YEAR PRIORS | 10 YEAR PRIORS |
|--------|------------------------|---------------|----------------|
| 107.10 | INTERFERENCE WITH EMPLOYEE | 0 | 0 |
| 106.10 | REFUSING DIRECT ORDER | 0 | 0 |
| 112.21 | COUNT PROCEDURE VIOLATION | 0 | 0 |
| 112.22 | VISIBILITY OBSTRUCTION | 0 | 0 |

AT THE TIME OF THE HEARING, WAS THIS INMATE HOUSED IN A SHU CELL: ___ YES  ✓ NO

\_\_\_ THE SANCTIONS IMPOSED ARE WITHIN THE PUBLISHED GUIDELINES

OR

\_\_\_ I HAVE IMPOSED SANCTIONS THAT HAVE DEPARTED UPWARD FROM THE PUBLISHED GUIDELINES, FOR THE FOLLOWING REASON(S):

     \_\_\_\_ OVERALL CLIMATE OF FACILITY
     \_\_\_\_ SEVERITY OF OFFENSE
     \_\_\_\_ LOCATION OF OFFENSE
     \_\_\_\_ MANNER OFFENSE WAS COMMITED
     \_\_\_\_ RISK TO SECURITY
     \_\_\_\_ RISK TO PERSONAL SAFETY
     \_\_\_\_ PROPERTY DAMAGE - RESTITUTION
     \_\_\_\_ DISCIPLINARY HISTORY
     \_\_\_\_ OTHER - EXPLAIN: _____

I HAVE RECEIVED A COPY OF THIS HEARING DISPOSITION DATED: 7/17/20

| | | |
|---|---|---|
| LT Slow. | S/D | 7/17/20  9:40. |
| HEARING OFFICER SIGNATURE | INMATE SIGNATURE | DATE & TIME RECEIVED |

YOU ARE HEREBY NOTIFIED OF THE FOLLOWING APPEAL PROCEDURES:

\_\_\_ FOR TIER II HEARING - APPEAL TO SUPERINTENDENT WITHIN 72 HOURS

\_\_\_ FOR TIER III HEARING - APPEAL TO COMMISSIONER WITHIN 30 DAYS

\*\*\*SUCCESSFUL PRINT COMPLETION\*\*\*

William Cole 02B1052
Sing Sing Corr. Facs.
364 Hunter Street
Ossining, NY 10562
8/11/20

RECEIVED
SDNY PRO SE OFFICE
2020 AUG 20 AM 9: 52

Pro Se Clerk's Office
United States District Court
Southern Dist. of NY
500 Pearl Street
New York, NY 10007

Re: Cole v. NYS DOCCS 7:19-cv-10038 (PMH)

Hon Clerk,
    I am at an embarrassment, and apologize for any inconvenience to ask that the enclosed resubmission replace the "Recommended/Second Complaint because it lacks what I'm trying to articulate.
    As of the above date I haven't heard from the Attorney General's office or the Marshall's office, so I took the liberty to send Mrs. Doran a copy of the Second Complaint.
    Sorry for any inconvenience.

Respectfully,

William J. Cole

LEGAL MAIL

William Cole
08305832
Sing Sing Corr. Fac.
354 Hunter Street
Ossining, NY
10562

Pro Se Clerks Office
United States District Court
Southern District of New York
500 Pearl Street
New York, NY
10007