UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM JAMES COKE, SR.,

                    Plaintiff,

        -against-

CARL J. KOENINGSMAN, et al.,

                    Defendants.

**MEMORANDUM OPINION
AND ORDER**

19-CV-10038 (PMH)

PHILIP M. HALPERN, United States District Judge:

       William James Coke, Sr. ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against Dr. Carl J. Koenigsmann ("Koenigsmann"), Dr. Frederick Bernstein ("Bernstein"), Dr. Robert Bentivegna ("Bentivegna"), Dr. Yelena Korobkova ("Korobkova"), Dr. Debra Geer ("Geer"), Shelley Mallozzi ("Mallozzi"),[1] Nurse Christine Raffaele ("Raffaele"), Jeff McKoy ("McKoy"), Quandera Quick ("Quick")[2] (collectively, "Defendants").[3] (Doc. 66, "4AC"). Plaintiff asserts seven claims for relief: (1) deliberate

---

[1] Mallozzi is the Director of the Inmate Grievance Program for DOCCS. *See Keesh v. Quick*, No. 19-CV-08942, 2021 WL 639530, at *1 (S.D.N.Y. Feb. 17, 2021).

[2] Plaintiff, in his opposition papers, requests that Quick be dismissed from this action. (Doc. 82 at 8 ("[P]laintiff . . . asks that Q. Quick be dismissed from this action . . . .")). Accordingly, the Court hereby dismisses all claims for relief as to Quick. *See Claudio v. Goord*, No. 03-CV-01234, 2006 WL 2290822, at *1 n.1 (S.D.N.Y. Aug. 8, 2006) (dismissing claims against defendant where plaintiff "agrees to" to do so "in his opposition papers").

[3] Plaintiff refers to Korobkova as "Korbkova" in the Fourth Amended Complaint. (*See generally* 4AC). But, based on Defendants' briefs and publicly available court filings, it appears that "Korobkova" is the correct spelling. (*See* Defs. Br., Defs. Reply); *see also Chavis v. Korobkova*, No. 19-CV-00083, 2020 WL 1233572, at *1-2 (S.D.N.Y. Mar. 13, 2020). Plaintiff also refers to Quick in the Fourth Amended Complaint as "Q. Quick." But, based on Defendants' briefs and publicly available court filings, it appears that her full name is "Quandera Quick." (*See* Defs. Br., Defs. Reply); *see also Keesh*, 2021 WL 639530, at *1. Lastly, Plaintiff refers to Koenigsmann in the Fourth Amended Complaint as "Koeningsmann." (*See generally* 4AC). But, based on Defendants' briefs and publicly available court filings, it appears that "Koenigsmann" is the correct spelling. (*See* Defs. Br., Defs. Reply); *see also Brown v. Koenigsmann*, No. 01-CV-10013, 2009 WL 2460859, at *1-3 (S.D.N.Y. Aug. 11, 2009).

indifference to his medical needs in violation of the Eighth Amendment; (2) conspiracy to tamper with his medical records; (3) violation of his Fourteenth Amendment procedural due process rights; (4) retaliation against him in violation of his First Amendment rights; (5) deprivation of access to the courts in violation of his First Amendment rights; (6) violations of the Americans with Disabilities Act ("ADA") and Rehabilitation Act of 1973 ("Rehab Act"); and (7) discrimination against him in violation of the Fourteenth Amendment's Equal Protection Clause.

Plaintiff filed his original Complaint on October 25, 2019 (Doc. 2), and his Amended Complaint on February 14, 2020. (Doc. 19). On May 15, 2020, Defendants[4] moved to dismiss the Amended Complaint. (Doc. 36). On June 16, 2020, after Defendants had already filed a memorandum of law in support of their motion to dismiss (Doc. 37), Plaintiff simultaneously filed a "response" to the motion to dismiss (Doc. 40), and a "Notice of Motion" (Doc. 39). Subsequently, on June 24, 2020, the Court granted Plaintiff thirty days to further amend his Amended Complaint (Doc. 43).

On July 16, 2020, the Court granted Plaintiff's request to file a Second Amended Complaint by August 17, 2020.[5] (Doc. 54). Plaintiff filed his Second Amended Complaint on July 22, 2020. (Doc. 56). Plaintiff, however, filed an addendum to his Second Amended Complaint on July 29, 2020, indicating that he wished to replace the relief requested in his Second Amended Complaint with the relief requested in the addendum. (Doc. 57). On August 11, 2020, the Court

---

[4] Whereas Koenigsmann, Bernstein, Korobkova, Geer, and Bentivegna were each served on January 9, 2020 (Docs. 10-14), Mallozzi and Raffaele were not served until August 12, 2020 (Docs. 64-65). Accordingly, only Koenigsmann, Bernstein, Korobkova, Geer, and Bentivegna moved to dismiss the Amended Complaint. (Doc. 36).

[5] Plaintiff's Second Amended Complaint named four additional defendants: Quick, McKoy, Dr. Frederick Parker ("Parker"), and Dr. Riza Ferdous ("Ferdous"). (Doc. 54). On August 11, 2020, the Court issued an Order of Service (1) dismissing Parker and Ferdous for lack of personal involvement in any alleged constitutional violation (Doc. 61 at 1-2); and (2) directing that summonses be issued for McKoy and Quick (*id*. at 4). McKoy and Quick were each served on September 10, 2020. (Docs. 68-69).

granted Plaintiff's request, as well as Defendants' request to withdraw their previously filed motion to dismiss. (Doc. 62). Further, the Court directed Defendants to file a new pre-motion conference letter by October 9, 2020. (*Id.*). On August 17, 2020, Plaintiff filed a Third Amended Complaint (styled as a new Second Amended Complaint). (Doc. 63). Then, on August 20, 2020, Plaintiff filed a Fourth Amended Complaint (styled as a Third Amended Complaint). (Doc. 66). Giving the *pro se* Plaintiff every benefit available, on October 9, 2020, the Court directed Defendants to answer or move with respect to the Fourth Amended Complaint by November 9, 2020. (Doc. 72).

On October 20, 2020, the Court denied Plaintiff's request for a default judgment to be entered against Defendants, as no Defendant was in default. (Doc. 74).

On November 9, 2020, all Defendants filed a pre-motion conference letter in anticipation of filing a motion to dismiss the Fourth Amended Complaint. (Doc. 76). Plaintiff did not file an opposition letter. (Doc. 77). Accordingly, the Court waived the pre-motion conference and granted Defendants leave to move to dismiss the Fourth Amended Complaint. (*Id.*). Defendants so moved on January 8, 2021. (Doc. 79; Doc. 80, "Defs. Br."). On January 28, 2021, in response to Defendants' motion, Plaintiff filed a "Notice of Motion" and "Opposition[](Response)." (Docs. 82, 84). Through these submissions, Plaintiff also purported to file a Fifth Amended Complaint without leave, as well as a *Vaughn* motion. (Doc. 83). On February 16, 2021, the Court struck the Fifth Amended Complaint, leaving the Fourth Amended Complaint as the operative pleading. (Doc. 87). Further, the Court denied Plaintiff's *Vaughn* motion, as well as Defendants' motion to strike Plaintiff's opposition briefs. (*Id.*). Lastly, the Court extended Defendants' time to file their reply brief until March 5, 2021, which Defendants timely filed. (Docs. 87; 90, "Defs. Reply").

On April 22, 2021, Plaintiff requested to "add new defendants" to this action. (Doc. 92). Defendants responded to this request on May 7, 2021. (Doc. 94). Then, on May 27, 2021, Plaintiff filed a letter-motion seeking to (1) "reinstate" Parker and Ferdous as defendants; and (2) compel discovery of unspecified documents. (Doc. 98). Defendants responded on June 4, 2021. (Doc. 101). Plaintiff subsequently filed several more letters on the docket seeking unspecified relief. (Docs. 102-105). All of this additional relief sought by Plaintiff is denied for the reasons hereafter set forth.

## BACKGROUND[6]

While incarcerated at Green Haven Correctional Facility ("Green Haven"), Plaintiff allegedly experienced "[a]ngio-edema [s]econdary to [a]ngio-tensin-[c]onverting enzyme inhibitor reaction with [s]evere [tongue] swelling" (4AC ¶ 29), "[a]naphylactic shock" (*id*.), and "[c]ervical and lumbar radicular nerve root pain" (*id*. ¶ 30). As a result of Plaintiff's numerous medical issues, he received extensive attention and treatment from medical providers (*id*. ¶¶ 29-33, 41-44, pp. 24-26, 28-29, 31-33, 35-37, 39-43),[7] including being given Lisinopril, a medication from which he allegedly suffered an allergic reaction (*id*. ¶ 11). But, ultimately, due to "pain, harrassment from inmates and [s]taff[,] as well as [the] indifference of defendant Korbkova," Plaintiff requested a transfer to Auburn Correctional Facility ("Auburn"). (*Id*. ¶ 12). Before his transfer to Auburn, however, Plaintiff alleges that Bentivegna, Korobkova, Raffaele, and Bernstein

---

[6] The facts as recited herein are taken from Plaintiff's Fourth Amended Complaint, and the exhibits annexed thereto. As at least one other court has noted, Plaintiff's "papers are rambling, cryptic, and often indecipherable." *Coke v. Superintendent, Green Haven Corr. Facility*, No. 06-CV-00811, 2010 WL 475274, at *2 n.2 (W.D.N.Y. Feb. 5, 2010). "Although some of the allegations are difficult to discern, the Court recounts the facts to the best of its ability." *Shakur v. McNeil*, No. 20-CV-00708, 2020 WL 4818906, at *1 n.4 (D. Conn. Aug. 17, 2020). "The Court has summarized [Plaintiff's] allegations, but it has still considered all of the factual allegations" contained in the Fourth Amended Complaint. *Id*.

[7] Citations to page numbers of documents filed by Plaintiff correspond to the pagination generated by ECF.

conspired to "remove or destroy medical evidence of injury," "inflict further injury to [P]laintiff's unresolved serious medical needs," and "target [P]laintiff for injury." (*Id*. ¶¶ 68, 80). Plaintiff also alleges that, while at Green Haven, Korobkova denied his request for unspecified accommodations. (*Id*. ¶ 47).

On August 29, 2017, Plaintiff was transferred to Auburn. (*Id*. at p. 55). Upon his arrival there, Plaintiff "complained" to Geer about his placement on the fourth floor of the facility due to "the pain he experiences going up the stairs." (*Id*. ¶ 45). Plaintiff met with and received treatment from Geer several more times. (*Id*. ¶¶ 45-46, pp. 56, 58-59). Geer also "regenerate[d]" and made copies of Plaintiff's medical records. (*Id*. ¶ 45, p. 20). And at some point, Geer denied Plaintiff's request "for a flats [] and a feed-up" pass, because there was "no indication" that Plaintiff had "any vertebral or sw[a]ll[o]wing problems." (*Id*. ¶¶ 45-47, 81). Plaintiff alleges, however, that due to his "neck[,] back[,] and leg[]" pain, he "began to challenge" Geer's opinion of his medical condition. (*Id*. ¶ 49). And when it came time to administer a "recommended" epidural injection, Plaintiff alleges that Geer "vanished." (*Id*. ¶¶ 53, 69, 81).

On May 31, 2019, Plaintiff was transferred to Sing Sing Correctional Facility ("Sing Sing"). (*Id*. ¶ 54). Plaintiff alleges that the transfer was approved "because of [his] long-term pain, wear and tear and not properly being informed or protected." (*Id*. ¶ 51). Plaintiff alleges that McKoy (Deputy Commissioner of Program Services for the New York Department of Corrections and Community Supervisor ("DOCCS")) had him transferred there. (*Id*. ¶ 79, pp. 95). While at Sing Sing, Plaintiff met with medical providers on several occasions (*id*. ¶¶ 55-56, 60-61) and enrolled in a Master's program (*id*. ¶ 79).[8]

---

[8] A letter from McKoy dated December 16, 2019 potentially undermines Plaintiff's allegation that he enrolled in a Master's program. According to that letter, Plaintiff "d[id] not meet the eligibility criteria for" the New York Theological Seminary's Master of Professional Studies program "due to the nature of [his] crime." (*Id*. at 94). On February 11, 2004, Plaintiff was convicted of three counts of rape in the first degree

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556

---

(N.Y. Penal Law § 130.35(1)); four counts of rape in the second degree (N.Y. Penal Law § 130.30) and sodomy in the second degree (N.Y. Penal Law § 130.45); and one count each of assault in the first degree (N.Y. Penal Law § 120.5(2)), attempted rape in the second degree (N.Y. Penal Law §§ 110.00, 130.30), and sexual abuse in the third degree (N.Y. Penal Law § 130.60(2)). *See Coke*, 2010 WL 475274, at *1. These convictions "ar[o]se out of several incidents wherein [Plaintiff] had sexual contact with his twin step-daughters when they were eleven and twelve years old." *Id*.

U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations . . . in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)).

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court also has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

I.   Statute of Limitations

"Section 1983 actions filed in New York are . . . subject to a three-year statute of limitations." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *see also Collins v. Miller*, 338 F. App'x 34, 36 (2d Cir. 2009) (same). "The claim accrues at 'that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Collins*, 338 F. App'x at 36 (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)). "Where . . . a plaintiff complains of a discrete act or series of discrete acts, each of which violates the law, the plaintiff has a separate claim for each act, and each act carries its own limitations period." *Gonzalez v. Hasty*, 802 F.3d 212, 223 (2d Cir. 2015). Discrete acts "'are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'" *Milani v. Int'l Bus. Mach. Corp.*, 322 F. Supp. 2d 434, 452 (S.D.N.Y. 2004), *aff'd sub nom. Milani v. Int'l Bus. Mach. Corp.*, 137 F. App'x 430 (2d Cir. 2005) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

Because Plaintiff signed his original Complaint on October 22, 2019, Defendants argue that this was the earliest possible date on which he could have initiated this action. (Defs. Br. at 4; Doc. 2 at p. 22); *see also Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (holding that a *pro se* prisoner's complaint is effectively filed when he delivers the complaint to prison officials). The Fourth Amended Complaint, however, is replete with references to events pre-dating October 22, 2016, i.e., the outer limit of the statute of limitations period. (*See, e.g.*, ¶¶ 11, 21-22, 27-28, 32, 34, 37-39). These references are largely unclear, and it is difficult to ascertain whether they are intended to support Plaintiff's timely claims or constitute separate claims altogether. And notably, Plaintiff does not argue that any exception to the statute of limitations applies here. Therefore, to

the extent that any of Plaintiff's claims arise from events that allegedly occurred before October 22, 2016, those claims are dismissed as time-barred.[9]

## II.   Section 1983 Claims

### A.   Deliberate Indifference to Medical Needs (Eighth Amendment)

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to his serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104) (brackets omitted)). "A plaintiff can prevail on a deliberate indifference to medical needs claim under the Eighth Amendment by satisfying a two-prong test." *Sutton v. Rodriguez*, No. 18-CV-01042, 2020 WL 5504312, at *4 (S.D.N.Y. Sept. 8, 2020).

> The first prong is objective and requires that the alleged deprivation in medical care be sufficiently serious. A deprivation in medical care is sufficiently serious if (1) the prisoner was actually deprived of adequate medical care and (2) the inadequacy in medical care is sufficiently serious. The latter inquiry contemplates a condition of urgency that may result in degeneration or extreme pain. . . . The second prong of the deliberate indifference test under the Eighth Amendment is subjective and requires that the plaintiff demonstrate that the defendant had a sufficiently culpable state of mind. A defendant had a sufficiently culpable state of mind if he acted or failed to act while actually aware of a substantial risk that serious inmate harm will result.

*Id*. *4-5 (internal citations and quotation marks omitted).

"A 'prisoner is not entitled to the best healthcare possible or even to a choice among available treatment modalities.'" *Robinson v. Wolf-Friedman*, No. 18-CV-02409, 2019 WL 4640236, at *6 (S.D.N.Y. Sept. 24, 2019) (quoting *Dichiara v. Pataki*, No. 06-CV-06123, 2007

---

[9] Defendants argue that, in addition to being barred by the statute of limitations, "to the extent Plaintiff is also asserting deliberate indifference claims against Dr. Bernstein, from August 14, 2014 through July 13, 2015, those claims must be dismissed" because they are "barred by collateral estoppel." (Defs. Br. at 5). Because those claims are otherwise barred by the statute of limitations, the Court need not, and does not, reach the issue of collateral estoppel.

WL 749742, at *3 (E.D.N.Y. Mar. 7, 2007)). "Indeed, prison officials and medical officers have wide discretion in treating prisoners, and Section 1983 is not designed to permit federal courts to interfere in the ordinary medical practices of state prisons." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). "If a prisoner's course of treatment is one about which reasonable doctors could disagree, an Eighth Amendment claim will not ordinarily lie." *Dichiara*, 2007 WL 749742, at *3; *see also Sonds*, 151 F. Supp. 2d at 311 ("A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference.").

i.  *Bernstein, Korobkova, Bentivegna, and Raffaele (Green Haven)*

Plaintiff's allegations against Bernstein, Korobkova, Bentivegna, and Raffaele (medical providers at Green Haven) are difficult to decipher, but he appears to allege that (1) Korobkova denied him an unspecified pass (4AC ¶ 47); (2) Bernstein "created a policy . . . to target" him (*id.* ¶ 80); and (3) Bernstein, Korobkova, Bentivegna, and Raffaele conspired to "inflict . . . injury for the purposes of retaliation" and "destroyed all medical evidence of injury" prior to his transfer from Green Haven to Auburn[10] (*id.*). Defendants argue that Plaintiff's deliberate indifference claim

---

[10] To the extent Plaintiff alleges that Bernstein, Korobkova, Bentivegna, and Raffaele conspired to deprive him of adequate medical treatment, and that Geer and Koenigsmann participated in that conspiracy (4AC ¶¶ 69-70), Plaintiff "fails to state any nonconclusory allegations pertaining to the existence of a conspiracy, a meeting of the minds to support a conspiracy claim, or any overt acts which would suggest the existence of a conspiracy. His bare statements that Defendants 'conspired' are insufficient to state an actionable claim for conspiracy." *Liner v. Fischer*, No. 11-CV-06711, 2013 WL 4405539, at *6 (S.D.N.Y. Aug. 7, 2013). Further, such claim is barred by the intracorporate conspiracy doctrine, as each of these medical officials worked for the same corporate entity (DOCCS) and was acting within the scope of their employment with regard to the alleged conduct. *See Little v. City of New York*, 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007) ("Under the 'intracorporate conspiracy' doctrine, the officers, agents, and employees of a single corporate entity, each acting within the scope of her employment, are legally incapable of conspiring together."); *Williams v. Fischer*, No. 09-CV-01258, 2011 WL 1812527, at *10 (N.D.N.Y. Feb. 9, 2011), *adopted by* 2011 WL 843919 (N.D.N.Y. Mar. 8, 2011) (dismissing conspiracy claim under intracorporate conspiracy doctrine where all defendants were employees of DOCCS). Therefore, Plaintiff's conspiracy claim against Bernstein, Korobkova, Bentivegna, Raffaele, Geer, and Koenigsmann is dismissed.

should be dismissed as to Bernstein, Korobkova, Bentivegna, and Raffaele because Plaintiff has failed to specifically allege how each of these Defendants was "deliberately indifferent to Plaintiff's serious medical needs" while Plaintiff was incarcerated at Green Haven. (Defs. Br. at 7). With respect to the alleged destruction of "medical evidence," Defendants argue that Plaintiff fails to specifically allege Bernstein, Korobkova, Bentivegna, and Raffaele's personal involvement. The Court agrees. (4AC ¶ 80).

Plaintiff's allegations are vague, conclusory, and fail to satisfy either the objective or subjective prong necessary to establish an Eighth Amendment deliberate indifference claim. *See Sutton*, 2020 WL 5504312, at \*4-5. Indeed, Plaintiff does not explain how Bernstein created a policy to "target" him, nor does he specify the injuries that Bernstein, Korobkova, Bentivegna, and Raffaele conspired to inflict. (4AC ¶ 80). Also, Plaintiff does not explain what type of pass Korobkova denied him, nor how such denial impacted his medical condition. (*Id*. ¶ 47). Further, Plaintiff fails to specify what "medical evidence" was allegedly destroyed, or how Bernstein, Korobkova, Bentivegna, and Raffaele were personally involved in destroying it. (*Id*. ¶ 80).

Moreover, Plaintiff's deliberate indifference claim against Bernstein, Korobkova, Bentivegna, and Raffaele is belied by the frequency with which Plaintiff received medical care while at Green Haven. (4AC ¶¶ 29-33, 41-44, pp. 24-26, 28-29, 31-33, 35-37, 39-43). On numerous occasions, Plaintiff was "seen, diagnosed, and treated by Green Haven medical providers" and "referred to multiple specialists to address his medical concerns." (Defs. Br. at 8 (citing 4AC ¶¶ 29-33, 37-39, 41-44, pp. 24-26, 28-29, 31, 33, 35-37, 39-43)). If anything, Plaintiff's own pleading reveals that Bernstein, Korobkova, Bentivegna, and Raffaele were deliberately *attentive* to his medical needs. Thus, it appears that Plaintiff's qualm is not with the quality of care he received at Green Haven; rather, it is with the decisions made by his caretakers.

11

But mere disagreement with a course of treatment is insufficient to state an Eighth Amendment deliberate indifference claim. *See Dichiara*, 2007 WL 749742, at *3; *see also Sonds*, 151 F. Supp. 2d at 311.

Accordingly, Plaintiff's Eighth Amendment deliberate indifference claim against Bernstein, Korobkova, Bentivegna, and Raffaele is dismissed.

ii. *Geer (Auburn)*

In addition to his medical providers at Green Haven, Plaintiff appears to assert an Eighth Amendment deliberate indifference claim against Geer, a medical provider at Auburn. Plaintiff alleges that Geer denied his request "for a flats [] and a feed-up" pass. (4AC ¶ 45). Plaintiff also alleges that he was "recommended" an epidural steroid injection but when it came time to administer the shot, Geer "vanished." (*Id.* ¶¶ 53, 69, 81, p. 59). And although Plaintiff complained about being placed on the fourth floor at Auburn due to his difficulty "going up the stairs" (*id.* ¶ 45), Geer apparently permitted him to remain there. None of these allegations, however, give rise to an Eighth Amendment violation.

As to the objective prong, Plaintiff does not specify whether his pain, if any, resulting from these decisions was "extreme." *Sutton*, 2020 WL 5504312, at *4 (quoting *Chance*, 143 F.3d at 702). Further, Plaintiff's medical records reveal that the urgency of his care with Geer was designated as "routine," thus indicating that his injuries were not "sufficiently serious." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994); (*see also* 4AC at pp. 56, 58-59). And lastly, that Geer allegedly recommended an epidural injection, but did not administer it, does not amount to an Eighth Amendment violation. *Cf. Washington v. The City of New York*, No. 10-CV-00389, 2011 WL 566801, at *2 (S.D.N.Y. Feb. 15, 2011) (failure to provide a recommended CAT scan does not violate the Eighth Amendment); *Dinkins v. New York*, No. 19-CV-08447, 2020 WL 5659554,

12

at *9 (S.D.N.Y. Sept. 23, 2020) (finding that refusal to provide a "recommended" MRI did not violate the Eighth Amendment). Here again, Geer did not deprive Plaintiff of adequate medical care; rather, as with his medical providers at Green Haven, Plaintiff merely disagreed with Geer's treatment decisions. But a "difference of opinion" regarding medical treatment does not constitute an Eighth Amendment violation. *Sonds*, 151 F. Supp. 2d at 311; *see also Dichiara*, 2007 WL 749742, at *3.

Plaintiff fares no better under the subjective prong. "To make a showing on the subjective prong, Plaintiff must prove 'that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed.'" *Dinkins*, 2020 WL 5659554, at *10 (quoting *Adamson v. Miller*, 808 F. App'x 14, 18 (2d Cir. 2020)). Here, Plaintiff's own submissions reveal that he met with and received treatment from Geer on numerous occasions. (*Id.* ¶¶ 45-46, pp. 56, 58-59). Such frequent treatment belies the notion that Geer "recklessly failed to act with reasonable care." *Dinkins*, 2020 WL 5659554, at *10; *see also Feliciano v. Anderson*, No. 15-CV-04106, 2017 WL 1189747, at *13 (S.D.N.Y. Mar. 30, 2017) ("The extensive treatment received by [plaintiff] undermines the notion that the medical staff disregarded serious risks to his health."); *Washington*, 2011 WL 566801, at *2 ("Plaintiff was treated several times by doctors . . . and . . . was given a narcotic medication when he complained that his pain persisted. The treatment Plaintiff received reflects that the Defendants identified and responded to Plaintiffs injury and his complaints of pain.").

As such, the Eighth Amendment deliberate indifference claim against Geer is dismissed.

### iii.   *McKoy and Mallozzi*

Plaintiff also alleges that McKoy and Mallozzi were deliberately indifferent to his medical needs. According to Plaintiff, McKoy "had notice of [P]laintiff's impairments" and "had [P]laintiff

moved to Sing Sing." (4AC ¶ 79). And Mallozzi "had notice of" Plaintiff's "serious medical impairment," but did not provide any "relief or accommodation[s]." (*Id.* ¶ 78). But these allegations fail to state an Eighth Amendment violation for two reasons.

First, Plaintiff's does not specify how either McKoy and Mallozzi were personally involved in his medical treatment and the alleged constitutional violations arising therefrom. Nor does he explain how, and to what extent, McKoy was personally involved in his transfer to Sing Sing. Rather, Plaintiff's allegations against McKoy and Mallozzi appear to be based solely on their "'high position[s] of authority,'" and Plaintiff's belief that, based on their positions, they had personal involvement in Plaintiff's medical care. *Allah v. Annucci*, No. 16-CV-01841, 2018 WL 4571679, at *6 (S.D.N.Y. Sept. 24, 2018) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). But such allegations are insufficient to establish their personal involvement. *See Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) ("[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." (internal quotation marks omitted)); *Hernandez v. Keane*, 341 F.3d 137, 144-45 (2d Cir. 2003) ("'Absent some personal involvement by [the supervisory official] in the allegedly unlawful conduct of his subordinates,' he cannot be liable under section 1983." (quoting *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987))). Moreover, to the extent that Plaintiff's claim against McKoy and Mallozzi is based on grievances that he submitted to them (4AC pp. 77, 94), this, too, is an insufficient basis to establish personal involvement. *See Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) ("Courts in this circuit have said that the receipt of letters or grievances, by itself, does not amount to personal involvement.").

Second, even if Plaintiff were able to allege personal involvement, his allegations are vague and conclusory, and therefore fail to satisfy the objective and subjective prongs of the Eighth Amendment deliberate indifference standard. *See Sutton*, 2020 WL 5504312, at *4-5.

Accordingly, Plaintiff's Eighth Amendment deliberate indifference claim against McKoy and Mallozzi is dismissed.

### B. Procedural Due Process (Fourteenth Amendment)

Plaintiff also brings a Fourteenth Amendment procedural due process claim against all Defendants. (4AC ¶¶ 83-84). To be sure, Plaintiff says the words "due process," but beyond that, he fails to articulate how his due process rights were violated in any meaningful sense. Absent more detail, such vague allegations are insufficient to state a claim. *See Harrison v. City of Corning*, No. 15-CV-06716, 2016 WL 5871369, at *6 (W.D.N.Y. Oct. 7, 2016) (finding that "passing reference to procedural due process" in amended pleading "fail[ed] to assert an actionable procedural due process claim").

Accordingly, Plaintiff's procedural due process claim against all Defendants is dismissed.

### C. Retaliation (First Amendment)

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action." *Handle v. Alexander*, No. 10-CV-09235, 2011 WL 1226228, at *2 (S.D.N.Y. Mar. 22, 2011) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). An action is "adverse" when it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . ." *Ruggiero v. Cty. of Orange*, No. 19-CV-03632, 2020 WL 5096032, at *7 (S.D.N.Y. Aug. 28, 2020) (quoting *Davis v. Goord*, 320 F.3d 346, 353

(2d Cir. 2003)). Conduct short of this standard is "simply *de minimis* and . . . outside the ambit of constitutional protection." *Id*. (quoting *Davis*, 320 F.3d at 353). Likewise, under the third element, the "allegations must support an inference that the protected conduct was 'a substantial or motivating factor for the adverse actions taken by prison officials.'" *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)). Bearing in mind that "[c]ourts properly approach prisoner retaliation claims with skepticism and particular care[ ] because virtually any adverse action taken against a prisoner by a prison official . . . can be characterized as a constitutionally proscribed retaliatory act," *Davis*, 320 F.3d at 352 (internal quotation marks omitted), "[c]onclusory allegations will not suffice; instead, a prisoner's claim for retaliation must be supported by specific and detailed factual allegations." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 517 (S.D.N.Y. 2012) (internal quotation marks omitted).

Here, Plaintiff alleges that Bernstein, along with Korobkova, Bentivegna, Raffaele, and Geer, retaliated against him after Plaintiff "got [Bernstein] and his cohort . . . in trouble." (4AC ¶ 80). Specifically, Plaintiff alleges that these Defendants "destroyed all medical evidence of injury and allowed [P]laintiff to be transferred" without such "evidence." (*Id*.). And, as a result of such destruction, Plaintiff alleges that (1) he was permitted to remain on the fourth floor at Auburn; and (2) there was a delay in determining that he required an epidural steroid injection. (*Id*. ¶ 69). But these allegations are conclusory, and therefore insufficient to state a retaliation claim. *See Vogelfang*, 889 F. Supp. 2d at 517. Indeed, Plaintiff does not specify what "medical evidence" was destroyed, how it was destroyed, or when it was destroyed. (*Id*. ¶ 80). And, most notably, Plaintiff does not explain what protected activity he engaged in, or how "there was a causal connection," *Handle*, 2011 WL 1226228, at *2, between such protected activity and the alleged destruction of "medical evidence" (4AC ¶ 80).

Accordingly, Plaintiff's retaliation claim against all Defendants is dismissed.

D.  <u>Access to Courts (First Amendment)</u>

"Prisoners . . . 'have a constitutional right of access to the courts.'" *Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004) (quoting *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). "[T]o establish a constitutional violation based on a denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in an actual injury to the plaintiff." *Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008) (citing *Davis*, 320 F.3d at 351).

Here, Plaintiff alleges that Mallozzi[11] "hinder[ed]" his First Amendment right to access the courts by denying his administrative grievances. (4AC at p. 20). But, crucially, Plaintiff fails to allege that Mallozzi's conduct was "deliberate and malicious," or that he suffered any "actual injury." *Collins*, 581 F. Supp. 2d at 573. Moreover, to the extent Plaintiff's claim arises from either the violation of a prison's grievance procedures, or the denial of one of his grievances, neither circumstance gives rise to a viable access-to-courts claim. *Johnson v. Wala*, No. 14-CV-01151, 2015 WL 4542344, at *4 (N.D.N.Y. July 27, 2015) ("[I]nmate grievance programs created by state law are not required by the Constitution and [as] a consequence[] allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim." (alterations in original)); *Corley v. City of New York*, No. 14-CV-03202, 2015 WL 5729985, at *9 (S.D.N.Y. Sept. 30, 2015) ("The First Amendment is not implicated, however, where prison officials deny an inmate access to grievance procedures." (quoting *Mimms v. Carr*, No. 09-CV-05740, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011), *aff'd*, 548 F. App'x 29 (2d Cir. 2013))).

---

[11] Plaintiff also asserts his access-to-courts claim against Quick. (4AC at p. 20). But Plaintiff, through his opposition, requested to dismiss her from this action. *See supra*, n.5. Therefore, all claims against Quick, including the access-to-courts claim, are dismissed. *See id*.

Accordingly, Plaintiff's access-to-courts claim against Mallozzi is dismissed.

   E.   ADA and Rehab Act

Plaintiff alleges that unspecified Defendants violated the ADA and Rehab Act by denying

him accommodations for his "vertebral and sw[a]llowing problems." (4AC ¶ 85). According to

Plaintiff, because Defendants failed to accommodate his needs, he suffered "degeneration." (Id. ¶

87). But these claims fail because Plaintiff in no way alleges that he was discriminated against on

the basis of his disability, as required by both statutes.[12] See Maccharulo v. New York State Dep't

of Corr. Servs., No. 08-CV-00301, 2010 WL 2899751, at *5 (S.D.N.Y. July 21, 2010) ("[A] claim

that does not allege such discriminatory treatment is not a viable claim under [the ADA or Rehab

Act]."). Indeed, Plaintiff himself concedes that he was not denied an accommodation for his

"vertebral and sw[a]llowing problems" due to discriminatory purpose (4AC ¶ 85); but rather,

because medical professionals determined, upon assessing Plaintiff's condition, that he did not

require one (id. ¶ 81).

Accordingly, Plaintiff's ADA and Rehab Act claims are dismissed.

   F.   Equal Protection (Fourteenth Amendment)

Plaintiff alleges that all Defendants discriminated against him in violation of the Fourteenth

Amendment's Equal Protection Clause. (Id. ¶¶ 83-84). Specifically, Plaintiff alleges that

Defendants "singled [him] out[,] placing him in a class of one." (Id. ¶ 84). But Defendants argue,

and the Court agrees, that Plaintiff has failed to plead any factual support for the notion that he

was "intentionally treated differently from others similarly situated and that there [was] no rational

---

[12] Although unclear, Plaintiff also appears to allege that his exclusion from the New York Theological Seminary's Masters of Professional Studies program at Sing Sing violated the ADA and Rehab Act by discriminating against him based on his criminal convictions for sex offenses involving minors. (4AC ¶ 88, p. 95). But being a convicted sex offender is not a "disability" under the ADA or Rehab Act, and therefore, Defendants could not have discriminated against him on this basis in violation of either statute.

basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Indeed, Plaintiff does not point to "any specific inmates, or groups of inmates" from whom he was

treated differently. (Defs. Br. at 18). Therefore, Plaintiff fails to show the "'extremely high degree

of similarly between'" himself and his comparators necessary to assert an equal protection claim

under a class-of-one theory. *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir.

2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).

Accordingly, Plaintiff's equal protection claim against all Defendants is dismissed.

III.   Motion to for Leave to Amend

On July 22, 2020, Plaintiff filed his Second Amended Complaint, in which Plaintiff named

four additional defendants, including Parker and Ferdous. (Doc. 56). On August 11, 2020, the

Court issued an Order of Service, in which Parker and Ferdous were dismissed as defendants for

lack of personal involvement in any alleged constitutional violation. (Doc. 61).

On May 27, 2021, Plaintiff filed a letter-motion—which the Court construes as a motion

for leave to further amend the Fourth Amended Complaint—seeking to reinstate Parker and

Ferdous as defendants.[13] (Doc. 98). On June 4, 2021, Defendants filed a letter in response,

asserting that the Court did not err in dismissing Parker and Ferdous for lack of personal

involvement. (Doc. 101). The Court agrees with Defendants.

Plaintiff's letter-motion merely asserts conclusory allegations as to Parker and Ferdous like

those that were rejected by the Court's previous Order. (Doc. 61). Plaintiff, who is on his Fourth

---

[13] Plaintiff's May 27, 2021 letter-motion also included a request for unspecified "evidence" regarding the alleged destruction of Plaintiff's medical records at Green Haven, which the Court construes as a motion to compel discovery. (Doc. 98). Because the Fourth Amended Complaint is hereby dismissed with prejudice, such motion is denied as moot. *Commc'ns Workers of Am., AFL-CIO v. Verizon New York Inc.*, No. 02-CV-04265, 2002 WL 31496221, at *8 (S.D.N.Y. Nov. 8, 2002) (granting motion to dismiss rendered other pending motions moot).

Amended Complaint, has had ample opportunity to properly add Parker and Ferdous as defendants in this action. The Court finds no reason that doing so at this stage would be productive, as Plaintiff remains unable to establish their personal involvement in any alleged constitutional violation. Therefore, the Court finds that any further attempt by Plaintiff to amend his pleading would be futile. *See Vasquez v. Yadali*, No. 16-CV-00895, 2020 WL 6384067, at *2 (S.D.N.Y. Oct. 30, 2020) (denying motion for leave to file a fourth amended complaint due to plaintiff's "repeated failure to cure any [pleading] deficiencies").

Accordingly, Plaintiff's motion for leave to amend his Fourth Amended Complaint is denied with prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiff's Fourth Amended Complaint in its totality with prejudice, as any amendment would be futile. *See Reed v. Friedman Mgt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) ("District courts should frequently provide leave to amend before dismissing a pro se complaint. However, leave to amend is not necessary when it would be futile." (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000))).

Moreover, for the reasons stated above, the Court DENIES Plaintiff's motion to reinstate Ferdous and Parker as defendants with prejudice.

The Clerk is instructed to terminate the motion sequence pending at Doc. 79 and Doc. 98, mail a copy of this Memorandum Opinion and Order to Plaintiff, and close this case.

**SO ORDERED:**

Dated:  White Plains, New York
       July 22, 2021

_____

Philip M. Halpern
United States District Judge